SWAIN
*v.*
BARROW.

## THE STATE *v.* DUNN, Administrator, et al.
### Suit against Sheriff's Surety, as Tax Collector for 1854.

The obligations of the sureties on the Sheriff's bond, held not to be affected by the erasure of the unmeaning phrase " for a like sum," nor by the interlineation of the names of the last two sureties.

The date of such instrument not being of the essence of it, a change of the date, so as to correspond with the date of its acceptance by the parish officers, could not invalidate it.

The sureties on such bond may recede before they have been accepted, and until they give notice of their wish to recede, they may be accepted. After acceptance the contract was perfect, and no party could retract.

The addition of two other sureties separately bound, could not affect the liability of the first eight, who continued to be severally bound, each for the sum and upon the conditions he had specified, and no others.

Where a Sheriff, by failure to give bond as Sheriff within the time prescribed by law, had thereby forfeited his capacity as Tax Collector, and afterwards he executes a bond as Sheriff with sureties and is made Collector of Taxes by appointment of the Recorder of the parish—*Held:* That the sureties were bound to know that he had forfeited his right as Tax Collector at the time of the execution of his bond, and that he could only be restored by the Recorder's appointment, and were not therefore discharged.

A defaulting Sheriff may be appointed Tax Collector after exhibiting a discharge from the proper officer of the State.

Sureties on a Sheriff's bond cannot be permitted to plead ignorance of a defalcation of the Sheriff at the time they signed the bond. The records of the Auditor's and Treasurer's office are open to the public, and they might have inquired into the State of his account. It was not the duty of the Auditor and Treasurer, who were neither parties nor privies to the bond, to hunt up the sureties and serve them with a copy of the Sheriff's account.

In this contract with the sureties there was no warranty by the State that the Sheriff was not a defaulter ; and an Act of the Legislature extending to the Sheriff time of payment, is no fraud on the sureties, who only guarranty his future fidelity.

Code, 3006.

APPEAL from the District Court of East Feliciana, *Ratliff*, J.

*Kernan*, for plaintiff. *Muse & Hardee* and *Pond*, for defendants and appellants.

SPOFFORD, J. The appellants, sureties on the bond of a late Sheriff of the parish of East Feliciana, seek to be relieved from liability for his defalcation as a State Tax Collector, under the assessment roll for the year 1854.

STATE
*v.*
DUNN.

We do not find that there was any material alteration in the bond. The sum for which, and the conditions upon which, each of the sureties bound himself severally, were in no wise changed by the erasure of the unmeaning phrase, "for a like sum," and the interlineation of the names of the last two sureties. The date of the acceptance formed no part of the instrument, as at first signed ; that date, having been endorsed with reference to a subsequent acceptance to be made by the three parish officers to whom the approval of the bond had been confided by law, was properly changed, so as to show the true date of the acceptance.

The eight sureties who signed on the 14th of March, 1855, obviously signed with a view to the contingency that they might afterwards be accepted or refused by the officers, two of whom were absent when they signed. Until the officers accepted them, they were at liberty to recede; until they gave notice that they wished to recede, the officers might accept them; they gave no such notice, but left their proposition open until the officers finally and formally accepted it, on the 29th of March, 1855. Then the contract was complete and no party could retract.

The two other sureties came into a similar bargain, on the last named date, each binding himself separately for a like sum, could not affect the liability of the first eight who continued to be severally bound, each for the sum and upon the conditions he had specified, and no others.

But, it is contended by the sureties, that the bond is void as to them, because it recites, that "whereas the said *A. J. Law,* Sheriff, *and by law collector of State taxes* in the parish of East Feliciana, will receive the assessment roll for the parish, on the acceptance of this bond, and his producing to the parish Recorder his receipt from the proper officer, showing the full payment of the tax heretofore collected," &c. The objection is, that he was held forth to them as Tax Collector, by virtue of his office of Sheriff, or by law, when in truth he only became collector by the appointment of the parish Recorder, having lost his right under the law, by failing to give a timely bond. The sureties were bound to know the law. Knowing it, they knew, when they signed the Sheriff's bond, on the 14th and 29th of March, 1855, that his office as Tax Collector was already vacated, by his neglect to give bond and security on or before the first Monday of the preceding January. Act 21st March, 1850, sec. 40, p. 139.

They knew also that he could only be restored to the place of Tax Collector by the appointment of the parish Recorder, and they bound themselves for his faithful conduct, when he should be so restored.

But they say it was not competent for the Recorder to appoint him, on account of his previous default, and that as he was never lawfully Tax Collector, they are not bound for him.

If they could be permitted to set up such a defence, the facts would not sustain them. No law has been cited, which rendered the Sheriff, although he had been a defaulter, incapable to receive the appointment after producing a receipt for the public money with which he had been previously entrusted. He was not appointed until he produced such a receipt. The only restriction laid upon the parish Recorder, by the 30th section of the above cited Act is, that he "shall not issue the warrant for collection nor deliver the roll to any person who may have been previously charged with the collection of public money, *until* such person shall exhibit a discharge from the proper officer of the State."

Being a temporary defaulter, is not a perpetual bar to the right of holding office. The disability is purged by the production of a receipt, showing that the money has been paid. Constitution, Art. 28.

Again: the sureties contend that they entered into the contract through error, induced by the fraudulent conduct of the officers of the State, and that this should absolve them.

The substance of this branch of the defence, if analysed, amounts only to an assertion that when they signed the bond, they did not know that their principal was in default to the State for a portion of the taxes of the year 1853, but that certain officers of the State, knowing it, suppressed the fact.

But it is highly probable that the sureties knew it also; first, because their principal was so tardy in giving his bond, the law requiring it to be given on or before the first Monday of January; and, secondly, because .the bond intimated upon its face, that he would only be entitled to receive the assessment roll upon producing to the parish Recorder his receipt from the proper officer, showing the payment of taxes heretofore collected, an expression which implies that no such receipt had yet been procured.

And if they did not know it, it was their own fault, and they cannot complain. If *Law* was not in arrears for the taxes of 1853, when they offered to go upon his bond, he must have had his tax receipt or quietus ; they could readily have satisfied themselves upon the point by demanding its exhibition as a condition upon which they would become his securities; moreover, the records of the Treasurer's and Auditor's offices are open to the public, and they might have inquired into the state of his accounts there. They volunteered to indemnify the State for the future conduct of their principal; the Auditor and Treasurer, who knew them not, who were neither parties nor privies to the execution of the bond, were not bound to hunt them up and serve a copy of *Law's* accounts with the State upon them.

They complain that the Auditor of Public Accounts did not require the District Attorney to proceed by rule against the Sheriff for his former default, as prescribed by the 62d section of the Act of 21st of March, 1850, p. 144. If he had done so, *non constat* that they would have been the wiser; but this law is directory, and, as a general principle, *laches* is not to be imputed to the government. *United States* v. *Kirkpatrick*, 9 Wheaton, 735; *United States* v. *Van Zandt*, 11 Wheaton, 184. In the contract with the sureties, there was no implied warranty that the State had exhausted all its remedies against *Law* for previous defaults, or that there were no previous defaults.

The State had a right to extend the time for him to pay his taxes previously due, and release him from the penalty, although the policy of such special legislation may well be doubted. The Legislature exercised that right, and on the 14th of March, 1855, (the day the first sureties signed the bond,) an Act was approved for his relief (Session Acts, p. 207), allowing him thirty days from that date to settle, upon the same terms as if the taxes of 1853 had been paid in the time prescribed by law. In accordance with this Act, he made his settlement. The indulgence of the Auditor was thus approved by the Legislature. But this action cannot be construed as a fraud upon the sureties, who undertook to guaranty his faithfulness in future.

The Recorder, Clerk and President of the Police Jury, who accepted and approved the bond, practised no deceit upon the sureties, and had nothing to disclose, more than the sureties knew themselves.

STATE
v.
DUNN.

The views we have expressed upon this part of the case, are amply supported by the cases of the *Police Jury of St. Landry* v. *Haw*, 2 L. 42, and the *State* v. *Huys*, 7 Ann. 118.

Finally: it is urged that the bond is void as to the sureties, because they assumed a more onerous obligation than their principal, the aggregate amount of their liabilities being larger than the sum for which the Sheriff was bound.

"The suretyship which exceeds the debt, or which is contracted under more onerous conditions, shall not be void, but shall be reduced to the conditions of the principal obligation." C. C. 3006. So this defence could not avail, if the allegation on which it is based were strictly true. But in reality, each of the sureties exercised the privilege of the law concerning official bonds of this class, and contracted a several obligation towards the State in a sum which he specified, and beyond which he could in no event be made liable. So that no surety has assumed an *obligation more onerous than his principal*; the sum specified by each being far less than that for which the Sheriff obligated himself.

It is unnecessary to notice the bills of exceptions.

Judgment affirmed.