WILLIAM A. PAXTON ET AL. V. STATE OF NEBRASKA.

FILED DECEMBER 19, 1899.	No. 10,977.

1. **Directing Verdict: REVIEW.** In reviewing a judgment rendered on a verdict, given in obedience to a peremptory instruction, it is the duty of the reviewing court to assume the existence of every material fact which the evidence for the complaining party establishes or tends to prove.

2. **Official Bond: DELIVERY.** An official bond is without validity until it has been delivered.

Paxton v. State.

3. **State Officers:** OFFICIAL BONDS: ACCEPTANCE BY GOVERNOR. The governor has no authority, as an agent of the state, to accept the official bonds of state or district officers, and by such acceptance make them binding obligations.

4. ———: ———: APPROVAL BY GOVERNOR. The duty of the governor with respect to the official bonds of state and district officers is merely to approve them.

5. ———: ———: FILING. The official bonds of state and district officers, except that of secretary of state, do not become binding obligations until they have been filed in the office of the secretary of state.·

6. ———: ——: ———. Section 15, chapter 10, Compiled Statutes, 1899, contemplates that an official bond, after its approval by the proper officer, shall be returned to the person presenting it, and be by him filed in the proper office for record.

7. **Delivery of Instruments.** An instrument is not delivered until it has passed beyond the dominion, control and authority of the maker, and is no longer capable of being recalled.

8. **Official Bond:** APPROVAL BY GOVERNOR. The approval of an official bond by the governor does not work its acceptance, nor make it a valid contract.

9. ———: DELIVERY BY PRINCIPAL: AGENCY. The principal in an official bond has an implied agency to deliver the bond as the contract of his sureties.

10. ———: POSSESSION BY PRINCIPAL: APPROVAL AND DELIVERY. Possession of an official bond by the principal on a day subsequent to that fixed by the statute for its delivery carries with it, *prima facie*, the right to have it approved and delivered.

11. ———: REVOCATION BY SURETIES: DELIVERY BY PRINCIPAL. Sureties on an official bond have the right, at any time before the obligation is delivered, to revoke their principal's authority to bind them; but, until such revocation, the right of the principal to deliver the instrument is presumed to continue.

12. ———: ———: ACCEPTANCE BY OBLIGEE. And, until the sureties have signified an intention to recede, the obligee may bind them by accepting their offer to answer for the official misconduct of their principal.

13. ———: DELIVERY: DELAY: KNOWLEDGE OF SURETIES: ADDITIONAL NAMES. Several days after the time fixed by statute for filing an official bond the sureties thereon signed an instrument reciting, "that any and all additional names that he [their principal] may procure on said bond shall in no manner affect our liability on said bond, and each of us are held liable the same as if said names had not been added." *Held*, That such instrument affords

the inference that, at the time it was signed, the sureties knew the bond had not become effective by having been approved and filed for record.

14. ———: ———: ———: DELIVERY BY PRINCIPAL. And *held*, also, that, when the principal presented the bond for approval, accompanied by such instrument, he had apparent authority from the sureties to have the obligation approved and delivered.

15. Bond of State Treasurer: APPROVAL: ADDITIONAL SURETIES. No officer of the state is authorized to demand additional sureties of the state treasurer after his official bond has been duly approved and filed for record.

16. Official Bonds: DELAY: VACANCY IN OFFICE. The failure of a state or district officer to have his official bond approved and filed for record in the proper office within the time fixed by statute creates a vacancy in the office to which he has been elected or appointed.

17. ———: ———: ———: OUSTER: WAIVER. In such case the state may waive its right to oust the incumbent, and elect to deal with him as the person entitled to the office.

18. Officer: WAIVER OF OUSTER: SURETIES ON BOND: ESTOPPEL. And if the state does waive its right, the sureties on the official bond of the officer are estopped from denying the validity of the bond because it was not approved and filed within the time fixed by law.

19. Conversion: JOINT TORT-FEASORS: SEPARATE ACTIONS. Where two or more persons have converted the property of another, the latter may sue them, either jointly or severally, as he may elect.

20. ———: ———: ———. And a court of equity will not require the injured party to pursue one of the wrong-doers rather than another who is equally culpable.

21. Evidence: STATEMENT BY ACCOUNTING OFFICER: SURETIES ON OFFICIAL BOND. A document prepared by an accounting officer during his term of office, showing the receipts and disbursements of, and the balance chargeable against, a financial officer, is competent evidence against the sureties on the official bond of the latter officer, if it was used by him in accounting to his successor and turning over the office, at the time and in the manner contemplated by the law and the contract of the sureties.

22. Witnesses: OFFICERS: BOOK ENTRIES. A person who has held an office for some considerable time is, presumably, competent to give an opinion as to the meaning of entries in the books of the office evidencing business transactions therein.

23. State Treasurer: ACCOUNTING: SECOND TERM: LIABILITY OF BONDSMEN. A state treasurer who, in accounting to himself, as his own

successor, turns over bank credits, which are afterwards entered as cash receipts on the books of his office, *prima facie*, relieves his first-term bondsmen from liability, and charges his sureties for the second term with the amount of such credits.

24. ———: OFFICIAL RECORDS: EVIDENCE. The official records kept by the state treasurer are competent evidence against his sureties, and, in the absence of countervailing proof, are conclusive.

25. Certificate of Deposit: RIGHTS OF TRANSFEREE. One to whom a certificate of deposit, or other evidence of money in the custody of a solvent bank, has been transferred is as effectually invested with control and dominion of such money as though there had been a manual delivery of it to him.

26. Officers: RECORDS: PRESUMPTIONS. The law presumes that a public officer faithfully performs official duty, and that the records of his office truly represent the business transactions entered therein.

27. Action Against State Treasurer: CONVERSION: EVIDENCE. In an action for a specific conversion of public money, brought by the state against an ex-treasurer and the sureties on his official bond, it is not error to exclude evidence tending to show that such officer paid his own funds into the public treasury, unless it appear that the alleged conversion occurred prior to such payment.

28. ———: ACCOUNTING: EVIDENCE. But, in an action for a general balance, such evidence would be admissible, even under a general denial, in support of a theory that an apparent shortage was the result of the treasurer having been charged on the books of his office with moneys which in fact belonged to himself.

29. Evidence: DECLARATIONS OF OFFICERS AND AGENTS. Public corporations act through their officers and agents, and the declarations of such officers and agents, made during, and in relation to, the transaction of official business, are, in a proper case, admissible in evidence as a part of the *res gestæ*.

30. ———: PLEADINGS. Pleadings may be received in evidence in suits, other than those in which they were filed, as admissions or declarations against interest.

31. ———: ———: ADMISSIONS. But such pleadings, when not signed or verified by the party himself, are received only upon actual or presumptive proof that the admissions which they contain were either made by his direction or were afterwards sanctioned by him.

32. ———: ———: ———. The weight to be given a pleading in another action, as an admission of the facts stated therein, is for the jury.

ERROR from the district court of Douglas county. Tried below before FAWCETT, J. *Reversed.*

The opinion contains a statement of the case.

*John C. Cowin, Frank T. Ransom, Robert Ryan* and *Frank Irvine,* for plaintiffs in error:

The court would have been justified in directing a verdict for the defendant sureties on the issue as to the delivery of the bond, and if not so, then certainly the issue should have been submitted to the jury. To render a bond effective as a binding obligation delivery is essential. See *Fay v. Richardson,* 7 Pick. [Mass.], 91; *Mills v. Gore,* 20 Pick. [Mass.], 28; *Powers v. Russell,* 13 Pick. [Mass.], 75; *Chadwick v. Webber,* 3 Greenl. [Me.], 141; *Porter v. Cole,* 4 Greenl. [Me.], 20; *Woodman v. Coolbroth,* 7 Greenl. [Me.], 181; *Simonton's Estate,* 4 Watts [Pa.], 180; *Allen v. Getz,* 2 P. & W. [Pa.], 310; *Whichard v. Jordan,* 6 Jones Law [N. Car.], 54; *Brown v. Westerfield,* 47 Nebr., 399; *Brittain v. Work,* 13 Nebr., 347; *McPherson v. Meek,* 30 Mo., 345; *Weed Sewing Machine Co. v. Jeudevine,* 39 Mich., 590; *Donnelly v. Rafferty,* 172 Pa. St., 587; *Overman v. Kerr,* 17 Ia., 485; *Parker v. Parker,* 1 Gray [Mass.], 409; *Steel v. Miller,* 40 Ia., 402; *Held v. Bagwell,* 58 Ia., 139; *United States Wind Engine & Pump Co. v. Drexel,* 53 Nebr., 771.

The office became *ipso facto* vacant upon failure of the treasurer to have his bond executed, approved and filed as provided by law. There was no waiver of the requirements of law as to time of tendering, approving and filing the bond. If there was any evidence tending to show such waiver, the issue was for the jury. See Compiled Statutes, ch. 10, secs. 5, 15; *State v. Lansing,* 46 Nebr., 514; *United States Wind Engine & Pump Co. v. Drexel,* 53 Nebr., 771; *Holt County v. Scott,* 53 Nebr., 176; *Livesey v. Omaha Hotel Co.,* 5 Nebr., 50; *Macfarland v. West Side Improvement Ass'n,* 53 Nebr., 417; *Boehme v. Omaha Hotel*

*Co.*, 5 Nebr., 80; *Estabrook v. Omaha Hotel Co.*, 5 Nebr., 76; *Pence v. Langdon*, 99 U. S., 578.

Under the pleadings there is no estoppel as against the sureties. See *Apthorp v. North*, 14 Mass., 166; *State v. Fredericks*, 8 Ia., 553; *Marshal v. Hamilton*, 41 Miss., 229; *Lingonner v. Ambler*, 44 Nebr., 316; *Burke v. Utah Nat. Bank*, 47 Nebr., 247; *Parliman v. Young*, 2 Dak., 175.

Exhibit 23—a statement by the auditor purporting to show the balance of moneys and securities for which treasurer Bartley was accountable to his successor on January 7, 1897—was incompetent, and it was error to admit it as evidence against the sureties. See *Lee v. Brown*, 21 Kan., 458; *Stetson v. City Bank of New Orleans*, 2 O. St., 167; *County of Mahaska v. Ingalls*, 16 Ia., 81; *Lancashire Ins. Co. v. Callahan*, 71 N. W. Rep. [Minn.], 261.

In case of a conversion, the restoration of the money or property, while not a defense to the action, goes in mitigation of damages to the extent to which restoration is made. See *Squire v. Hollenbeck*, 9 Pick. [Mass.], 551; *Greenfield Bank v. Leavitt*, 17 Pick. [Mass.], 1; *Merrill v. How*, 24 Me., 126; *Bates v. Courtwright*, 36 Ill., 518; *Tripp v. Grouner*, 60 Ill., 474; *Nightingale v. Scannell*, 18 Cal., 315; *Watson v. Coburn*, 35 Nebr., 492; *Coburn v. Watson*, 48 Nebr., 257; *District Township of Viola v. Bickelhaupt*, 68 N. W. Rep. [Ia.], 914.

References as to effect on all parties of adding names of additional sureties without the knowledge or consent of those who originally signed: *Henry v. Coates*, 17 Ind., 161; *Houck v. Graham*, 106 Ind., 195; *Hall v. McHenry*, 19 Ia., 521; *Berryman v. Manker*, 56 Ia., 150; *Browning v. Gosnell*, 91 Ia., 448; *Wallace v. Jewell*, 21 O. St., 163; *Ford v. First Nat. Bank*, 34 S. W. Rep. [Tex.], 684; *Stoner v. Keith County*, 48 Nebr., 279; *Mersman v. Werges*, 112 U. S., 139; *Stone v. White*, 8 Gray [Mass.], 580; *Miller v. Finley*, 26 Mich., 249; *Barnes v. Van Keuren*, 31 Nebr., 165.

References as to question of shortage in Bartley's first

34

term: *Cedar County v. Jenal*, 14 Nebr., 254; *State v. Hill*, 47 Nebr., 456; *In re Treasurer's Settlement*, 51 Nebr., 116; *Bush v. Johnson County*, 48 Nebr., 1; *Whitney v. State*, 53 Nebr., 287.

The admission in evidence of Exhibit 26—the record of a suit in Lancaster county on the bond of Bartley for his first term of office—presented an issue for the jury as to whether or not there was a defalcation during his second term, and if so, the amount thereof, and it was prejudicial error to exclude from the jury the consideration of that issue. See *Snyder v. Chicago, S. F. & C. R. Co.*, 112 Mo., 527; *Ayres v. Hartford Fire Ins. Co.*, 17 Ia., 176; *Kamm v. Bank of California*, 74 Cal., 191; *Rich v. City of Minneapolis*, 40 Minn., 83; *Guy v. Manuel*, 89 N. Car., 83; *Blackmore v. Boardman*, 28 Mo., 420; *Burgess v. Inhabitants of Wareham*, 7 Gray [Mass.], 345; *Green v. North Buffalo Township*, 56 Pa. St., 110; *Harrington v. Inhabitants of Lincoln*, 4 Gray [Mass.], 563; *State v. Dennis*, 39 Kan., 515; *People v. Stephens*, 71 N. Y., 527; *State v. Ober*, 34 La. Ann., 361; *State v. Taylor*, 11 La. Ann., 430.

*C. J. Smyth, Attorney General, W. D. Oldham, Deputy Attorney General*, and *Ed P. Smith*, for the state.

References as to question relating to delivery of bond: *Holt County v. Scott*, 53 Nebr., 191; *State v. Dunn*, 11 La. Ann., 550; *Pequawket Bridge v. Mathes*, 8 N. H., 139; *King County v. Ferry*, 19 L. R. A. [Wash.], 500; *Sampson v. Barnard*, 98 Mass., 359.

Bartley and his sureties are estopped from denying the validity of the bond, and from denying that he was *de jure* treasurer. See *State v. Rhoades*, 6 Nev., 352; *Blaco v. State*, 58 Nebr., 557.

Error can not be predicated upon the admission of improper evidence, when it is obvious that the unsuccessful party was not prejudiced. See *Terry v. Beatrice Starch Co.*, 43 Nebr., 866; *Farmers Loan & Trust Co. v. Memminger*, 48 Nebr., 17.

References as to evidence: *Shafer v. Whiting*, 55 Nebr., 756; *Davis v. Hilbourn*, 41 Nebr., 35; *Hiatt v. Brooks*, 17 Nebr., 33; *Knapp v. Jones*, 50 Nebr., 490; *Morgan v. Durfee*, 9 C. L. J. [Mo.], 12; *Dryden v. Britton*, 19 Wis., 31; *Godin v. Bank of Commonwealth*, 6 Duer [N. Y.], 76; *Stewart v. Simpson*, 1 Wend. [N. Y.], 376; *Connor v. Giles*, 76 Me., 132; *Combs v. Hodge*, 21 How. [U. S.], 397; *Delaware County v. Diebold Safe Co.*, 133 U. S., 473; *Vogel v. Osborne*, 32 Minn., 167; *Weisbrod v. Chicago & N. W. R. Co.*, 20 Wis., 442; *Isabelle v. Iron Cliffs Co.*, 57 Mich., 120; *Wilkins v. Stidger*, 22 Cal., 232; *Dennie v. Williams*, 135 Mass., 28.

SULLIVAN, J.

At the general election in 1894 Joseph S. Bartley was elected to the office of state treasurer, as his own successor. On January 3, 1895, he took the oath required by law, and tendered his official bond to the governor for approval. The sureties whose names then appeared upon the obligation were: Nathan S. Harwood, F. M. Cook, A. B. Clark, John H. Ames, Charles A. Hanna, Mary Fitzgerald, C. C. McNish and E. E. Brown. The governor did not approve the bond on the day it was presented, but returned it to Bartley, who promised to strengthen it by procuring additional sureties. On January 9, 1895, the bond was again presented for approval with the names of Thomas Swobe, Cadet Taylor and W. A. Paxton added to the names of the original obligors. It was thereupon approved, and on the same day filed for record and recorded in the office of the secretary of state. Bartley, at the end of his second term, was found to be a defaulter, and this action was instituted in behalf of the state to recover of the defendants, as his sureties, the amount of the defalcation. The cause was tried to a jury in the district court of Douglas county, and resulted in a verdict and judgment against all the defendants except Mary Fitzgerald, who succeeded in establishing the defense of incapacity to contract at the time

her signature was obtained. The verdict against the sureties, who are here complaining, was rendered in obedience to a peremptory instruction from the trial court; and it becomes, therefore, our duty, in examining the questions presented for decision, to assume the existence of every material fact which the evidence for the defendants establishes or tends to prove.

The original sureties contend that they are not bound, because the bond was not accepted and approved on or before January 3, which was the first Thursday after the first Tuesday in that month. Brown further insists that the additional sureties signed without his consent, and that he thereby became released from his obligation. Paxton, Swobe and Taylor claim that the bond was already effective when their signatures were obtained, and that their undertaking is void for want of a consideration to support it. We will consider these defenses together. The petition alleges that the bond was delivered to the governor on January 3, and on that day filed for record in the office of the secretary of state. It is also alleged that the bond was afterwards returned to Bartley to obtain the signatures of additional sureties, and that on January 9 it was again handed to the governor, who then approved it and filed it with the secretary of state. These averments of the petition are traversed, and, after a careful examination of the record, we quite agree with the statements of counsel for the defendants, that the evidence conclusively shows that the bond was not filed in the office of the secretary of state until January 9. Prior to that date no contract relations existed between the state and any of the defendants herein growing out of the signing of the bond in suit. A bond, like a deed, is without validity until it has been delivered. Without delivery it is void. See *United States Wind Engine & Pump Co. v. Drexel*, 53 Nebr., 771; *Duer v. James*, 42 Md., 492; *Donnelly v. Rafferty*, 172 Pa. St., 587; *Fay v. Richardson*, 7 Pick. [Mass.], 91. As we understand the law, the governor was not the agent of the state to

accept the treasurer's bond. His duty was to approve it merely. He was not authorized to accept it on behalf of the state, and thereby give it vitality as a contract. By section 5 of chapter 10, Compiled Statutes, 1899, it is provided that all official bonds of officers chosen at a general election shall be filed in the proper office on or before the first Thursday after the first Tuesday in January next succeeding the election. Section 6 of the same act declares that the official bonds of all state and district officers, except the governor, shall be approved by the governor, and be filed and recorded in the office of the secretary of state. The governor's bond must be approved by the chief justice of the supreme court. Section 15 declares the consequence of a non-compliance with the requirements of the act. It is as follows: "If any person elected or appointed to any office shall neglect to have his official bond executed and approved as provided by law, and filed for record within the time limited by this act, his office shall thereupon *ipso facto* become vacant, and such vacancy shall thereupon immediately be filled by election or appointment as the law may direct in other cases of vacancy in the same office." It seems entirely clear from the statutory provisions quoted and referred to that the official bond of the state treasurer does not become a binding obligation before it has been filed with the secretary of state. Section 15, in plain terms, declares that a public office shall become vacant if the person chosen to fill it neglects to have his official bond filed in the proper office within the proper time. This certainly implies that the bond shall be returned, after its approval, to the person presenting it, so that he may do the further act which is, under the law, indispensable to the completion of his title to the office. His right to the possession of the bond after its approval necessarily includes the right to file it or not, as he may think best, and precludes, of course, the idea of a prior delivery. An instrument is not delivered until it has passed beyond the dominion of the maker, and is

no longer capable of being recalled. If it be still under his control, and subject to his authority, it is not a binding contract. See *Duer v. James, supra; Fisher v. Hall*, 41 N. Y., 416; *Younge v. Guilbeau*, 3 Wall. [U. S.], 636. It was competent for the executive, under the provisions of chapter 10, *supra*, to approve the treasurer's bond, but it was not within his power to vitalize it by acceptance; that function belonged exclusively to the secretary of state. "The law," as was said in *Holt County v. Scott*, 53 Nebr., 176, "contemplates that the officer will have the bond approved, afterward filed and recorded. If he secured its approval, and did not file or deliver it, it would be no more binding because of the approval than it would without it. The approval does not work the acceptance of the bond."

Having reached the conclusion that Mr. Bartley's bond was still in his hands and subject to his control on January 9, we will inquire whether he had, on that day, authority to deal with it so as to make it a binding contract between the sureties and the state. It is, we believe, a doctrine of universal recognition that the principal in an official bond has an implied agency to deliver it as the contract of his sureties. They intrust it to him for that purpose. See *Pequawkett Bridge v. Mathes*, 8 N. H., 139; *Stephens v. Crawford*, 1 Ga., 574; *King County v. Ferry*, 19 L. R. A. [Wash.], 500. The obligation in suit was given by all the sureties to Bartley, to be by him presented for approval and filed in the office of the secretary of state. There is nothing in the record to indicate that any of the sureties signed conditionally, or that there was any actual limitation upon Bartley's implied authority to use the bond in furtherance of the purpose for which it was signed. Possession of the bond on January 9 carried with it, *prima facie*, the right to have it approved and delivered. See *Sampson v. Barnard*, 98 Mass., 359; *State v. Rhoades*, 6 Nev., 352. The sureties had the right to revoke their principal's authority at any time before the bond was delivered; but without such

revocation the right to deliver continued, and, as we have said, possession of the instrument was evidence of the right. Until the sureties were accepted, they were at liberty to recede; but until they signified an intention to recede, the state might bind them by accepting their offer to answer for the official misconduct of their principal. See *State v. Dunn*, 11 La. Ann., 550. There is in this record an entire absence of evidence from which it might be justly inferred that the delivery of the bond in its final form was in fact unauthorized. The only evidence bearing upon this point clearly indicates that the original sureties desired that the bond should be approved after January 3, strengthened by such additional sureties as Bartley might be able to procure. Between January 3 and the time when the bond was approved they signed a paper, referred to in the bill of exceptions as "Exhibit 2e," reciting that "each having signed the bond of Joseph S. Bartley, as state treasurer of the state of Nebraska, do hereby consent and agree that any and all additional names that he may procure on said bond shall in no manner affect our liability on said bond, and that each of us are held liable the same as if said names had not been added. Jan. —, 1895." This document affords, we think, but one rational inference, viz., that Bartley's bond had not been approved or filed within the time appointed by the statute. No officer of the state is authorized to demand additional sureties of the state treasurer after his official bond has been duly approved and filed for record. Sureties signing under such circumstances are not bound, there being no consideration for their promise. See *Stoner v. Keith County*, 48 Nebr., 279. This being so, the original sureties must have signed "Exhibit 2e" knowing, or at least believing, that their bond had not yet become effective. The sole motive for giving the bond was to establish Bartley in the office of treasurer; and, if that end had already been accomplished, the procurement of additional sureties would have been an idle ceremony—a vain and useless act.

When Bartley presented his bond, accompanied by "Exhibit 2e," on January 9, he was undoubtedly acting within the scope of an apparent authority from all his sureties to have the obligation approved and delivered; and we think the evidence conclusively shows that his apparent authority and his real authority were identical.

It is true that Bartley's right to act as treasurer became extinguished upon his failure to have his bond filed and approved on or before January 3. See Compiled Statutes, 1899, ch. 10, sec. 15; *State v. Lansing*, 46 Nebr., 514. The state might, on or after January 4, appoint another person to fill the office, but it was not bound to do so. It might waive its right to oust Bartley, and elect to deal with him in the character which he assumed. Section 15 of the law in relation to official bonds was enacted for the protection of the public, and not for the benefit of sureties; and they, consequently, can not be heard to object that approval and acceptance were not within the prescribed time. See *Holt County v. Scott*, *supra*; *Town of Ashkum v. Lake*, 12 Ill. App., 25; *Monteith v. Commonwealth*, 15 Gratt. [Va.], 172; *State v. Rhoades*, *supra*. The bond in suit was, with the implied and express authority of the sureties, approved and delivered after the forfeiture occurred. The state accepted it, relied on it, and was induced by it to waive its right to exclude Bartley from the office of treasurer. The right to the office was claimed by virtue of an election. The bond so states; and the bondsmen can not be permitted to escape liability by denying now the existence of a right which in behalf of their principal they successfully asserted on January 9, 1895. See *Holt County v. Scott*, *supra*; *Blaco v. State*, 58 Nebr., 557, 78 N. W. Rep., 1056; *State v. Rhoades, supra; Monteith v. Commonwealth, supra; Chandler v. State*, 1 Lea [Tenn.], 296; *Village of Olean v. King*, 116 N. Y., 355; *Swan v. State*, 48 Tex., 120; *Morris v. State*, 47 Tex., 583; *Waters v. State*, 1 Gill [Md.], 302; *Commonwealth v. City of Philadelphia*, 27 Pa. St., 497; *Middleton v. State*, 120 Ind., 166; *Mayor v. Harrison*, 30 N. J.

Law, 73; *Ferguson v. Landram*, 5 Bush [Ky.], 237; *Mississippi County v. Jackson*, 51 Mo., 23; *Police Jury v. Brookshier*, 31 La. Ann., 736.

Having disposed of the main question, we will now turn our attention to some other assignments of error upon which a reversal of the judgment is claimed. The petition charges that on January 2, 1897, Bartley transferred to the Omaha National Bank, in payment of a void warrant held by it, $201,884.05 of the money of the state, and that such transfer amounted to a conversion. Some days before the trial the defendants asked leave to file an amended and supplemental answer, setting forth that the transferee of the fund and holder of the warrant was a state depository, and as such had in its custody, at the time of the transfer, the money alleged to have been converted. The court denied the application, and this ruling is assigned for error. The claim of the defendants is that the depository bank is primarily liable for the loss of the money paid upon the warrant; that it and its sureties should have been brought into court and charged with the amount of the unauthorized payment; and that Bartley's sureties should, as to this amount, have been entirely exonerated, or charged, at most, with a secondary liability. The legal effect of the transaction in question, according to the former decisions of this court, was to render both Bartley and the bank liable to the state as joint tort-feasors. See *Bartley v. State*, 53 Nebr., 310, s. c. on rehearing, 55 Nebr., 294; *State v. Bartley*, 56 Nebr., 810; *State v. Omaha Nat. Bank*, 59 Nebr., 483. The evidence in this case relating to that transaction is, in its essential features, the same as that given in the cases cited, and, therefore, according to a familiar doctrine of the law of torts, the state was at liberty to sue either or both or the joint wrong-doers. See *Kellow v. Central I. R. Co.*, 68 Ia., 470; *Johnson v. Chicago, M. & S. P. R. Co.*, 31 Minn., 57; *Pollett v. Long*, 56 N. Y., 200; *Stone v. Dickinson*, 5 Allen [Mass.], 29; *Boyd v. Insurance Patrol*, 113 Pa. St., 269. The cases cited in

support of the application to amend do not go to the extent of holding that equity will, under any circumstances, deprive a party of the right of election, and compel him to pursue one wrong-doer rather than another who is equally culpable. The state has in this case chosen to proceed against Bartley for a tortious act amounting to official misconduct; and it has a right to insist that his bondsmen shall perform their contract by making good the loss sustained by the public.

Error is assigned on the admission in evidence of "Exhibit 23" tendered by the state for the purpose of showing the balance with which Bartley was chargeable at the end of his second term. This exhibit is a statement prepared by the auditor of public acounts, and purports to show the moneys and securities for which Bartley, as treasurer, was accountable to his successor on January 7, 1897. It was produced by Bartley and handed to his successor, J. B. Meserve, in the office of the treasurer on the morning of January 8, at the time the office was being turned over, and in connection with the accounting which was then being made by the outgoing to the incoming treasurer. It was, in substance, a declaration by Bartley, while in the act of accounting, that the amounts mentioned in the document were the amounts for which he should account. It was the duty of Bartley to account to his successor, and to turn over all moneys and securities with which he was chargeable. The sureties contracted that this should be done. It was an official duty, the performance of which was necessary to their exoneration. The accounting was made at the very time the law required it to be made; and we, therefore, think that, although Bartley had ceased to be the *de jure* treasurer by reason of Meserve's having qualified, his declaration as to the amount of moneys and securities which he should turn over to his successor was admissible as evidence against the sureties. It was a declaration made during the transaction of business, for which they were liable and so became part of the *res gestæ*. See 1 Green-

leaf, Evidence [12th ed.], sec. 187; Brandt, Suretyship [1st ed.], sec. 518; *Lancashire Ins. Co. v. Callahan,* 68 Minn., 277; *Stetson v. City Bank of New Orleans,* 2 O. St., 167. But, if we are mistaken in our conclusion upon this point, the admission in evidence of "Exhibit 23" would not be reversible error, because the correctness of the balance shown by the paper is conclusively established by other competent proof. Mr. Meserve was called as a witness for the state, and permitted, over objection, to explain the meaning of certain entries in the books kept by Bartley as treasurer. The objection to the evidence is that the books speak for themselves, and that the witness was not shown to possess the qualifications of an expert. There was no error in the ruling. While it is true the books speak for themselves, their meaning is not apparent at once to the average juror. Mr. Meserve had, at the time of the trial, been state treasurer for more than two years, and was, therefore, presumably competent to give an opinion as to the meaning of entries evidencing business transactions in the treasurer's office.

A further contention of the defendants is that the court held them liable for a defalcation which occurred during Bartley's first term. This claim is based on the fact that Bartley, at the beginning of his second term, turned over to himself, as his own successor, a large amount of bank credits in lieu of actual cash. It is indisputably established that, in the accounting between the treasurer and the governor on January 8, 1895, Bartley produced what purported to be bank drafts, certificates of deposit, and other vouchers for money in bank, and that these credits were considered and accepted as the equivalents of money which they were supposed to represent. The attorney general insists that this transaction exonerated the first sureties and charged the second; and, we think, in view of the evidence, his position is tenable. The defendant sureties are, of course, liable only for moneys received by their principal during the second term; their contract does not bind them to answer for securities .

which the treasurer was not authorized to accept in pay-
ment of obligations due to the state. But if the transfer
of the bank credits in question was, in substance, a
transfer of cash, the sureties are liable. The owner of
a certificate of deposit, or other evidence of money in the
custody of a solvent bank, is as effectually invested with
control and dominion of such money as though there had
been a manual delivery of it to him. Such is the doctrine
of the later decisions of this court. See *State v. Hill*, 47
Nebr., 456; *Bush v. Johnson County*, 48 Nebr., 1. What-
ever uncertainty there may be as to the position of the
court upon other questions considered in the *Hill Case*,
there is no doubt upon this point. Two of the judges
and the three commissioners concurred in this statement
of the law: "A state treasurer who, on taking charge of
the office, instead of demanding the funds due from his
predecessor in cash, accepts in payment thereof certifi-
cates of deposit issued by a bank in which such funds
have been deposited for safe-keeping, is chargeable upon
his bond for the amount of such payment, and his lia-
bility therefor is not affected by the fact that he is una-
ble to realize the money upon such certificates by reason
of the subsequent failure of said bank." See *State v. Hill*,
*supra*. In the *Bush Case* (*Bush v. Johnson County, supra*)
the question was again presented, and the court, in an
opinion by the chief justice, held that the transfer of a
credit in a solvent bank is a transfer of money within
the meaning of the law. That the bank credits trans-
ferred by Bartley to himself represented money in solv-
ent banks is shown by the entries in the books of the
treasurer's office. These records show that on January
31, 1895, Bartley had on hand, as cash, the money rep-
resented by the bank vouchers turned over on January
8. Other records subsequently made by Bartley as treas-
urer testify to the same fact. These records are compe-
tent evidence against the sureties; and, in the absence
of countervailing proof, would be conclusive. See *Van
Sickel v. Buffalo County*, 13 Nebr., 103; *Albertson v. State*,

9 Nebr., 429; *Ohio & M. R. Co. v. People*, 119 Ill., 207; *Pike v. People*, 84 Ill., 80; *Rizer v. Callen*, 27 Kan., 339; *Locke v. Bennett*, 7 Cush. [Mass.], 445; *Town of Union v. Bermes*, 15 Vroom [N. J. Law], 269. That Bartley had, during his first term, entered these same bank credits on his books as cash indicates nothing more, we think, than that they were considered and treated as money subject to his dominion and under his control. We can not presume that the records are false, but must, on the contrary, indulge the presumption that the treasurer performed, faithfully, the duties with which he was charged. See *Hastings School District v. Caldwell*, 16 Nebr., 68; *Taylor v. Wilson*, 17 Nebr., 88; *Green v. Barker*, 47 Nebr., 934; *Blaco v. State*, 58 Nebr., 557.

Another assignment of error relates to the rulings of the court excluding the proffered testimony of the witness Balch, and the books of the Omaha National Bank in connection therewith. By this witness, and the books of the bank of which he was assistant cashier, the defendants proposed to show that the warrant, for the payment of which Bartley, as treasurer, drew his check for $201,884.05 on January 2, 1897, had been previously sold by him and the proceeds of the sale turned over to the state, or paid out for its use and benefit. We are entirely satisfied that the rejection of this evidence was not error. The books of the treasurer's office are presumably a true record of the receipts and disbursements of the public revenues. It can not be assumed, without proof, that Bartley, in violation of his duty, charged himself with moneys which did not belong to the state. The rejected evidence does not go to the extent of showing that condition of affairs; and it had, therefore, no tendency to disprove the shortage disclosed by the state's evidence. There being, at the time it is claimed the proceeds of the warrant were paid to the state, no proof of any defalcation during the second term, it is clear the evidence in question was inadmissible, except on the theory that Bartley had been charged, as treasurer, with moneys

which in fact belonged to himself. Had the defendants offered to prove that he was so charged, and that the apparent shortage was the result of false entries in the treasurer's books, we think the evidence would have been admissible, even under a general denial, since the action is only in part for the conversion of a specific fund. But the defendants could not defeat a recovery, or break down the plaintiff's case, merely by showing that there had been, at different times, a wrongful commingling of Bartley's money with the money of the state. That fact would not answer the evidence of a defalcation furnished by the official records.

It is finally contended that the court erred in directing the jury to find in favor of the plaintiff for the full amount claimed in the petition. This contention must be sustained. There was conflicting evidence that should have been submitted to the jury. The action proceeded on the theory that Bartley had fully accounted for the treasury balance with which he was chargeable at the end of his first term. To prove that he had not so accounted, the defendants gave in evidence a transcript of a record of the district court of Lancaster county showing the institution and pendency of a suit brought, in behalf of the state, by the attorney general on his own motion, and, at the request of the governor, to recover of the first term bondsmen an alleged shortage of $335,000. The petition was verified by the attorney general on information and belief, but, according to his testimony, without any personal knowledge of the facts. The bringing of the action in Lancaster county was, in effect, a declaration by the state that Bartley had not accounted for the moneys received by him, as treasurer, during his first term. Public corporations are compelled to act through their officers and agents, and the declarations of such officers and agents, when made during the transaction of official business and in relation thereto, are admissible in evidence as part of the *res gestæ.* See *Gray v. Rollinsford,* 58 N. H., 253; *Chicago v. Greer,* 9 Wall. [U. S.],

726; *Town of Sharon v. Salisbury*, 29 Conn., 113; 1 Am.
& Eng. Ency. Law [2d ed.], 691. The pleadings, under
the reformed system of procedure, "are the written state-
ments, by the parties, of the facts constituting their re-
spective claims and defenses" (Code of Civil Procedure,
sec. 89); they are not, as formerly, the mere flourishes
of the draughtsman; and the practice, therefore, is to
receive them in evidence in other suits when offered as
admissions or declarations against interest. See *Bunz v.
Cornelius*, 19 Nebr., 107; *Miller v. Nicodemus*, 58 Nebr.,
352, 78 N. W. Rep., 618; *Ludwig v. Blaskshere*, 102 Ia.,
366; *Feldman v. McGuire*, 55 Pac. Rep. [Ore.], 872. When
not signed or verified by the party himself, they are re-
ceived only upon actual or presumptive proof that the
admissions which they contain were either made by his
direction or were afterwards sanctioned by him. See
*Ayers v. Hartford Fire Ins. Co.*, 17 Ia., 176; *Vogel v. Osborne*,
32 Minn., 167. Being the admissions of the party against
whom they are offered, or else the admissions of an agent
having authority to make them, they possess evidential
value; they afforded some probability of the existence of
the facts admitted. In this case the question does not
arise whether a particular admission in a pleading was
made with the suitor's authority, or permitted to stand
with his approval. The broad question is whether the in-
stitution of the suit in Lancaster county is evidence
against the state that a right of action existed. We think
it is. The attorney general had express statutory author-
ity to sue the first term bondsmen, and the governor had
like authority to direct such a suit to be brought. See
Compiled Statutes, 1899, ch. 83, art. 5. Manifestly, then,
the bringing of the action was a declaration by the state
that a defalcation had occurred during Bartley's first
term. It implied, logically, that either the attorney gen-
eral or the governor, or both, had made an investigation
into the treasurer's accounts, and had, as a result of such
investigation, concluded that there was a shortage, for
which the first term sureties are liable. And, when we

consider that the governor had in fact inquired into the condition of the treasury before requesting the institution of the suit, and that the Lancaster county action is still presumably pending, we can not doubt that there was sufficient evidence to take the case to the jury, and that it was error to direct a verdict in favor of the state for the full amount of its claim. In this connection it should be remembered that, while the attorney general testified that he had no personal knowledge of the facts alleged in the petition filed in Lancaster county, there is no proof in the record that the action was improvidently instituted, or that it has been yet abandoned. The state, it is true, offered to show that the Lancaster county case was commenced on the faith of a decision of this court which has been recently overruled; but the trial court refused the evidence, and left the matter unexplained. The proffered testimony should have been received. It is always competent for a party to weaken the force of an admission by showing the circumstances under which it was made. For the error committed by the district court in refusing to submit the case to the jury the judgment is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

NORVAL, J., dissenting.

I am unable to agree with my associates to the proposition that the turning over by Bartley to himself, at the commencement of his second official term, of bank drafts, certificates of deposit and other credits for and in lieu of money relieved the bondsmen of his first term and charged the sureties for the second term with the amounts of such drafts, certificates of deposit and other credits. It was held otherwise in an able opinion by LAKE, C. J., in *Cedar County v. Jenal*, 14 Nebr., 254, wherein it was stated: "Thus we see that, it being money that was in Jenal's hands, belonging to the county, both the law and his official bond united in requiring him to hand that over

to his successor.   The delivery of Parmer's certificates was not payment, for they were mere promises of a stranger to the county to pay money.   The payment of money can be effectuated only by the delivery of that which by the law of the land is recognized as money. *   *   *   In the collection, care and disbursement of the revenues in this state, such certificates are not recognized at all by the law, and no officer has any right whatever to deal in them on behalf of the public.   If a treasurer invest the public funds in them, he is guilty of a highly penal offense.   Criminal Code, sec. 124.   It would indeed be a strange system of laws that would permit an act, denounced as a felony, to be pleaded in bar of an action brought to recover money lost by that act.   But such is not the law.   The only way in which it was possible for Jenal to have satisfied the law and his bond, and relieved himself and his sureties from responsibility as to this money, was to have handed it over to his successor in office.   It being money which he held on the public account, it was money that the law and his bond required him to produce and hand over.   Nothing else could suffice."   It is true the decision in the case from which the foregoing excerpt was taken received a severe shock at the hands of the majority of the court in *State v. Hill*, 47 Nebr., 456, but the writer there assailed, in language as strong as he could command, the proposition that certificates of deposit were money, and that their acceptance from an outgoing officer as money released him and his sureties.   I can not better express the views I now entertain upon the subject than to here reproduce what I said in the *Hill Case*.   After quoting section 2, article 4, chapter 83, Compiled Statutes, this language follows: "The foregoing statute defining the duties of the state treasurer requires him to account for and pay over, on the expiration of his term, to his successor, all moneys received by him belonging to the state.   This he can alone do by delivering the amount in actual cash.   In no other way can he satisfy the conditions of his bond to

35

well and truly perform the duties of his office required by law. It is money that he is required to pay over. It is idle to say that a certificate of deposit is money. We know it is not. It is the mere promise of the person or bank issuing it to pay money either on demand or at a fixed time. It is absurd to say that a promise to pay money is money. No person is required to accept such paper in discharge of a debt, and yet it is insisted that the liability of an outgoing officer and his sureties is released by the delivery to and acceptance by his successor of certificates of deposit in settlement, and that the state, whether it will or not, is bound. To such doctrine I cannot yield assent." Of course, when certificates of deposit, bank drafts or other credits have been received in settlement from an outgoing officer for and in lieu of cash, and the money is thereafter realized thereon by the successor in office, to that extent the outgoing officer and his bondsmen are discharged from liability, for it is a payment in money when the cash is actually realized on the credits. The books in the state treasury left by Bartley, and the official statements made by him during his second term in charging himself with the specified amount of cash on hand, justifies the inference, in the absence of a showing to the contrary, that the money was obtained by Bartley on the credits which he turned over to himself, at the beginning of his second term as state treasurer.

As to the decision in *Bush v. Johnson County*, 48 Nebr., 1, all I care to say is that the writer took no part in that decision.

I prefer not to express myself on the questions discussed in the opinion of SULLIVAN, J., relative to the execution, approval and filing of the official bond of Bartley, but place my decision that the sureties are liable upon the proposition that, when this case was last before us, a judgment in their favor was reversed, and the cause remanded for a new trial. This was, in legal effect, an adjudication that the bond was a valid obligation, and became the law of the case, binding alike upon the parties and the courts.