STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, V. DUNBAR STATE BANK ET AL., APPELLANTS: C. L. KELLY, COUNTY TREASURER, INTERVENER, APPELLEE.

FILED JANUARY 30, 1930. No. 26941.

*C. M. Skiles* and *I. D. Beynon,* for appellants.

*George H. Heinke, contra.*

Heard before GOSS, C. J., GOOD, THOMPSON, EBERLY and DAY, JJ., and FOSTER and SHEPHERD, District Judges.

FOSTER, District Judge.

It appears that D. G. McAllister was county treasurer of Otoe county, Nebraska, from January 4, 1923, until January 7, 1927, and that on the latter date C. L. Kelly succeeded him. On January 4, 1923, McAllister designated the Dunbar State Bank of Dunbar, Nebraska, as a depository for county funds, and on the same date the board of county commissioners approved such bank as a depository for a term of four years.

McAllister, during all of his term, kept a deposit in the bank. On March 3, 1925, a depository bond was filed in the office of the county clerk of Otoe county for $25,000. This bond was approved by the commissioners on March 3, 1925. It is recited in this bond that it is for a period of two years, beginning on the 2d day of March, 1925, and ending on the 22d day of March, 1927; that thereafter, and

on the 24th day of December, 1926, the same bank filed an application to become a depository for a period of four years, beginning January 7, 1927. The board of county commissioners approved this application on January 7, 1927. No depository bond, however, was given at this time.

In pursuance to such approval, Kelly, then county treasurer, received the money on hand in the bank from McAllister, and transferred the account to his own name and continued to deposit and draw out money from such account during the months of January, February, March, and part of April, 1927. On April 6, 1927, Kelly had on deposit in the bank, as treasurer, the sum of $28,023.53. On April 6, 1927, the department of trade and commerce took charge of the property and affairs of the bank and remained in possession until April 23, 1928, at which time Dempster was appointed receiver by the court. While Dempster was in charge as agent of the state, a dividend amounting to 22 per cent. of the deposits was paid to the various depositors. The dividend check of $6,175.17, being 22 per cent. of the deposits held by the bank in the name of Kelly, as county treasurer, was held by Kelly to be delivered in case the court should so determine. Upon this state of facts, trial was had in the district court, and judgment entered to the effect that the 22 per cent. dividend on the deposit of Otoe county, amounting to $6,175.17, be paid to Kelly, and that the remainder, amounting to $21,848.36, be allowed as a preferred claim against the depositors' guaranty fund. The receiver appeals from this finding of the district court.

The state claims that the bond originally given was continuing and covered the funds deposited in the bank in Kelly's name, as well as those held under the name of McAllister, and such bond constitutes other security than the guaranty fund, under section 12, ch. 30, Laws 1925, and was a collateral agreement under section 39, ch. 191, Laws 1923; that this would place the deposit in a class where it would not be on the basis of other deposits, and would not receive dividends until the county had exhausted its resources against the bond.

The state further claims that the bond was given contrary to the statutes, in that the deposits made thereunder were for more than 50 per cent. of the capital stock and surplus of the depository bank, and was an illegal act on the part of the authorities of Otoe county, and, therefore, they cannot recover in a court of equity.

The intervener claims that the bond given was only for the term of county treasurer McAllister and could in no wise be considered a bond for his successor, county treasurer Kelly; that the funds were transferred from McAllister to Kelly upon the expiration of McAllister's term; that no bond, other securities, or collateral agreements were given or made to secure or induce Kelly or Otoe county to deposit funds in the Dunbar State Bank; that the intervener is entitled to the dividend already paid by the bank, and to the allowance of the balance of the claim as preferred against the depositors' guaranty fund.

It seems that, under the statutes of the state of Nebraska, bonds given by depositories cover only the term of the official and a new bond should be required for each official term. The time is definitely fixed by section 6193, Comp. St. 1922, and reads, in part, as follows:

"The bonds hereby required shall cover one term only and new bonds shall be required for each and every official term."

This section was amended by section 1, ch. 96, Laws 1925, as follows:

"The bonds hereby required shall cover one term of the county treasurer only and new bonds shall be required for each and every official term."

This law was further amended by section 4, ch. 34, Laws 1927, to read as follows:

"All bonds given to secure deposits of public money shall expire January 1st of each year."

The last amendment above quoted does not apply to the case at bar, because it was not in force until July of 1927.

It is evident under the law that the bond given in this case expired with the term of McAllister as county treasurer, and this would be January 7, 1927. The liability

under the bond ceased when McAllister retired and the funds were turned over to Kelly.

It is argued that the giving of a check by McAllister to Kelly was not a proper transfer of funds, and, therefore, the deposit in the Dunbar State Bank could not be considered as having been received by Kelly. We do not agree with this contention. The transfer was made upon the books of the bank, and checks honored by the bank, signed by Kelly. This court has passed upon the question of transfer of funds in the case of *Paxton v. State,* 59 Neb. 460, saying:

"One to whom a certificate of deposit, or other evidence of money in the custody of a solvent bank, has been transferred is as effectually invested with control and dominion of such money as though there had been a manual delivery of it to him."

We are of the opinion that there was a valid transfer of funds from McAllister to Kelly.

It is strongly contended by the state that the bond given is other security and also constitutes a collateral agreement and, therefore, takes the deposit in question out of the class of general depositors. We have already held that the bond in this case had expired and did not apply to the public funds deposited and held by county treasurer Kelly. It would necessarily follow that it would not be other security or a collateral agreement.

It is contended that the county treasurer violated the statutory provision in making a deposit of public funds in excess of 50 per cent. of the paid-up capital stock of the bank, and the deposit, not being a legal deposit, was not protected. This court has passed directly upon this question in the case of *State v. Peoples State Bank,* 111 Neb. 136, as follows:

"Where a county treasurer deposits public funds in a state bank in excess of 50 per cent. of the paid-up capital stock of said bank, the entire deposit is within the protection of the depositors' guaranty fund."

We think that this rule is applicable to the case at bar,

and that the public funds deposited by the county treasurer were protected by the depositors' guaranty fund.

A bond given to secure public funds deposited in a bank by a county treasurer expires with the term of such official and does not apply to deposits made by the new treasurer. Such bond, not being in force, could not be considered security for such funds, nor could it be considered a collateral agreement. The funds, being public moneys, receive the protection of the depositors' guaranty fund, regardless of the fact that such deposit was in excess of 50 per cent. of the paid-up capital stock of the depository bank.

The decree of the district court should be affirmed and judgment entered accordingly.

AFFIRMED.