**COUNTY OF PLATTE v. NEW AMSTER-DAM CASUALTY CO. et al.**
(two cases).

Nos. 424, 425.

District Court, D. Nebraska, Omaha Division.

April 9, 1946.

480

Emmett S. Brumbaugh, of Omaha, Neb., for plaintiff.

Kennedy, Holland, DeLacy & Svoboda, of Omaha, Neb., for New Amsterdam Casualty Co.

Munger & Rhodes, of Omaha, Neb., for United States Fidelity & Guaranty Co.

Abel V. Shotwell, of Omaha, Neb., for National Casualty Co.

DONOHOE, District Judge.

The matters presented to the court by the motions to dismiss, to strike, and to make the complaints more definite and certain, are similar in both of the above numbered cases, present the same legal questions, and will now be consolidated for the purpose of this memorandum.

No. 424 Civil:

W. L. Boettcher was elected to the office of county treasurer of Platte County, Nebraska, for a term of four years commencing on January 3, 1931, and continuing until January 3, 1935, "or until his successor should be elected and had qualified."

To secure the faithful performance of his duties as treasurer, W. L. Boettcher, as principal, and the New Amsterdam Casualty Company and the United States Fidelity and Guaranty Company, corporations organized and existing under the laws of Maryland, and the National Casualty Company, a corporation organized and existing under the laws of Michigan, as sureties, executed and delivered three official bonds in the total sum of $150,000.00, naming the county of Platte and the state of Nebraska as the obligees. These bonds were in different amounts; the bond on which the New Amsterdam Casualty Company was the surety being in the sum of $75,000.00, the bond on which the United States Fidelity and Guaranty Company was the surety being in the amount of $25,000.00, and the bond on which the National Casualty Company was surety being in the amount of $50,000.00.

The bonds provided in similar language that principal and sureties were bound unto the county of Platte and the state of Nebraska in certain sums for the payment of which "we bind ourselves, our heirs, executors and administrators * * * *jointly and severally*". (Emphasis added).

The conditions of the bonds were: "That if the said *W. L. Boettcher* shall render a true account of his office and of the doings therein to the proper authority, when required thereby or by law; and shall promptly pay over to the person or officers entitled thereto all money which may come into his hands by virtue of his said office; and shall faithfully account for all the balances of money remaining in his hands at the termination of his office; and shall hereafter exercise all reasonable diligence and care in the preservation and lawful disposal of all money, books, papers and securities, or other property appertaining to his said office, and deliver them to his successor, or to any person authorized to receive the same; and if he shall faithfully and im-

partially, without fear, favor, fraud or oppression, discharge all other duties now or hereafter required of his office by law, then this Bond to be void, otherwise in full force and effect."

On December 7, 1942, there was filed in the district court in and for Platte County, Nebraska, an action by Platte County, individually and as trustee, against the sureties.

The complaint, after alleging that W. L. Boettcher had been elected and had acted as county treasurer of Platte County for a term of four years commencing on January 3, 1931, and that the bonds previously mentioned in this memorandum were executed and delivered in connection with such term of office, sets forth that on January 3, 1931, there was due and owing to Platte County, individually and as trustee for certain municipal and governmental agencies, personal property taxes in the sum of $32,-285.26. (It appears from page 17 of the brief of the National Casualty Company that this sum represents uncollected taxes which became due and delinquent while W. L. Boettcher was in office during previous terms.) It is alleged that these taxes were delinquent, and that among the duties imposed upon W. L. Boettcher, as treasurer, was the duty to notify by mail all persons owing personal taxes that unless the taxes were paid by February 1st a distress warrant would be issued therefor. It is further alleged that it was the duty of W. L. Boettcher in December, 1931, and during that month in each succeeding year of his term, to issue such notices to those owing personal taxes and after February first next following, to issue distress warrants against persons then owing delinquent taxes.

The complaint alleges that W. L. Boettcher in disregard of the duties and requirements of his office wrongfully and unlawfully failed and neglected to mail notices to persons owing delinquent taxes, and failed to issue distress warrants for the collection of these taxes during the years 1931 to 1934, inclusive, and that by reason of such breach of duty W. L. Boettcher, as principal, and the sureties on his bonds, became liable for the amount of such taxes.

In addition to the sum of $32,285.26 owing in taxes when W. L. Boettcher took office on January 3, 1931, it is alleged that he and his sureties became liable, on similar grounds, for the additional sums of $3,-806.63, $3,682.53, $3,803.75 and $3,799.02, representing additional taxes due and delinquent at the close of the years 1931, 1932, 1933 and 1934 respectively, or a total of $47,377.19.

No. 425 Civil:

This action, including the provisions of the bonds and the allegations of the complaint and the time of the filing thereof, is in all respects similar to Civil No. 424; the only distinction being that No. 425 Civil covers the term of office of W. L. Boettcher commencing on January 3, 1935, and ending on January 3, 1939. The defendants in Civil No. 425 are the New Amsterdam Casualty Company and the United States Fidelity and Guaranty Company. The complaint alleges that these companies were the sureties on official bonds given by W. L. Boettcher in connection with his term of office commencing on January 3, 1935.

In No. 425, the plaintiff seeks to carry forward and recover from the sureties, in addition to the amounts representing delinquent personal property taxes for the years 1935 to 1937, inclusive, $47,377.19, which represents taxes due and owing at the time when W. L. Boettcher became treasurer for the term of office commencing on January 3, 1935.

Both actions have been removed to the federal court on the ground of diversity of citizenship.

The cases are now before the court on defendants' motions to dismiss on the grounds that the complaints fail to state a claim upon which relief may be granted, because barred by the Statute of Limitations of the state of Nebraska, and because plaintiff has failed to join and bring in as a necessary party W. L. Boettcher, the principal, or to state why he or his representatives were not joined as parties defendant. In connection with the motions to dismiss, defendants have also filed motions to strike certain allegations from the complaint, and, if the latter motions are denied, for an order requiring plaintiff to make its complaint more definite and certain.

It is stated at page 25 of the brief of the defendant National Casualty Company that W. L. Boettcher died on August 13, 1939, and that his estate has not been probated.

The defendants contend that W. L. Boettcher, or his representatives, are persons having a "joint interest" in the actions within Federal Rules of Civil Procedure, rule 19(a), 28 U.S.C.A. following section 723c, which provides: "Subject to the provisions of Rule 23 (class actions) and of subdivision (b) of this rule, persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants. When a person who should join as a plaintiff refuses to do so, he may be made a defendant or, in proper cases, an involuntary plaintiff."

It is the defendants' position that W. L. Boettcher, or his representatives, are necessary parties, and that failure to join them as parties defendant, or to state why they were omitted, as required by Rule 19(c), requires that the complaint be dismissed on defendants' motions.

■ The term "joint interest", as used in Rule 19(a), refers to parties designated as necessary or indispensable under the former practice, and means an interest which must be directly affected by the adjudication in the case. United States v. Washington Institute of Technology, 3 Cir., 138 F.2d 25; Currier v. Currier, D.C.N.Y., 1 F.R.D. 683; Samuel Goldwyn, Inc., v. United Artists Corporation, 3 Cir., 113 F. 2d 703.

■ Subdivision (a) of Rule 19 deals with the necessary joinder of indispensable parties and is declaratory of the law as it previously existed with respect to who are indispensable parties. Under such previously existing law, the indispensability of parties depended upon state law. Young v. Garrett, 8 Cir., 149 F.2d 223.

■ The court will therefore look to the law of Nebraska in determining whether W. L. Boettcher, or his representatives, are necessary or indispensable parties to the instant actions.

Before referring to the Nebraska cases dealing with the question of parties, it seems proper to point out that, as said in the Young case, Rule 19 gives the court power to omit parties who are not indispensable, if by joining them the court would be deprived of jurisdiction of the case. It may also be helpful to quote the definition of "necessary" and "indispensable" parties taken from Shields v. Barrow, 17 How. 130, 136, 15 L.Ed. 158, 160, as stated in Moore's Federal Practice, Volume 2, at p. 2144, as follows: "'Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights in it * * * are commonly termed necessary parties; but if their interests are separable from those of the parties before the court so that the court can proceed to a decree, and do complete and final justice, without affecting other persons, not before the court, the latter are not indispensable parties. Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience' are indispensable parties."

All of the bonds involved in the instant actions expressly provide that the principal and sureties bind themselves "jointly and severally". Section 12-103 of the Compiled Statutes of Nebraska, 1929, which was in effect when the bonds were executed, provides:

"All official bonds of county, township, school district and precinct officers must be in form, *joint and several,* and made payable to the county in which the officer giving the same shall be elected or appointed, in such penalty and with such conditions as required by this article or the law creating or regulating the duties of the office." (Emphasis added.)

■ This statute, like other pertinent statutes in effect when the bonds were given, enters into and constitutes a part of the undertaking evidenced by the bonds. Village of Hampton v. Gausman, 136 Neb. 550, 286 N.W. 757; United States Fidelity & Guaranty Co. v. McLaughlin, 76 Neb. 307, 107 N.W. 577, 109 N.W. 390.

Only two Nebraska cases have been found which deal with the question of parties in an action on a joint and several obligation. Council Bluffs Savings Bank v. Griswold, 50 Neb. 753, 70 N.W. 376; and Barker v. Glendore, 71 Neb. 740, 99 N.W. 548.

The former case was an action on a foreclosure decree which had been rendered by an Iowa court in mortgage foreclosure proceedings. This case will not be discussed since it is evident from the opinion that the Nebraska Supreme Court, while stating in the official syllabus that an action may be prosecuted against any one or more of several persons jointly and severally liable without joining others liable for the same indebtedness, based its conclusions upon an Iowa statute.

The Barker case was before the Supreme Court on four occasions, 51 Neb. 846, 71 N.W. 750; 60 Neb. 470, 83 N.W. 678, 83 Am.St.Rep. 541; 62 Neb. 150, 87 N.W. 20; and 48 Neb. 279, 99 N.W. 548.

The case, as disclosed in the last opinion, was an action against the sureties on a county judge's bond, wherein the petition alleged that the judge, by color of his office, had obtained or received certain moneys paid into court by an administrator for distribution to the heirs of an estate. It was alleged that the judge thereafter wrongfully refused to pay the money over to plaintiff, as guardian for a minor heir.

It appears from the opinion that a judgment had been rendered against the judge in a separate suit against him upon the same cause of action.

The sureties claimed that the judge, as principal, was a necessary party defendant to the action on the bond, and that by reason of Section 643 of the Code of Civil Procedure (concerning by whom and how actions may be brought on official securities—now Section 20-2101 Compiled Statutes of 1929, Section 25-2101 Revised Statutes, 1943) only a joint action against the principal and sureties might be maintained.

While the terms and provisions of the bond are not set out in the reported opinion, it is evident from the case as reported in 48 Neb. 279, 99 N.W. 548, at page 549, that the statute then in force and providing that the official bonds of county officers shall be in form, joint and several, was in all respects the same as Section 12-103 of the Compiled Statutes of 1929 as previously quoted in this memorandum.

After deciding that an individual might sue upon the bond in his own name, as the real party in interest, the Supreme Court, through Commissioner Letton, concluded that the action might be brought against the principal and his sureties, jointly or severally, and that failure to join the principal was not a good defense.

That the bonds involved in the instant actions represent a joint and several obligation seems too evident to require a citation of authorities.

Speaking with reference to an executor's bond containing the provision with respect to the principal and sureties that "we do jointly and severally bind ourselves and our lawful representatives", this court in Johnson v. Marsh, 49 F.Supp. 137, at page 139 said: "Its terms patently create a joint and several liability of its obligors."

The court added: "And it is the general rule that upon such a bond, the principal obligor and the surety may be sued alone or jointly at the option of the plaintiff. 34 C.J.S. 1213, Title, Executors and Administrators, § 981 [subsec.] a(2), and cases there cited. It is not asserted, nor does the court consider that it could reasonably be maintained, that there is any contrary rule in Nebraska."

The rule, as stated in 20 C.J.S., Counties, § 164, at page 987, is as follows: "The principal and sureties on a county official's bond may be sued either jointly or severally; * * *."

In Cunningham v. Brewer, 144 Neb. 211, at page 221, 13 N.W.2d 113, 16 N.W. 2d 533, 535, the Supreme Court said: "We have defined indispensable parties in Jordan v. Evans, 99 Neb. 666, 157 N.W. 620, as follows: '"Indispensable parties" to a suit are those who not only have an interest in the subject matter of the controversy, but also have an interest of such a nature that a final decree cannot be made without affecting their interests or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.'"

■ A recognized authority on the law of contracts states:

"Where parties are under joint and several duties there is, in legal effect, one more contract than there are obligors. Each obligor has separately contracted, and all of them have together contracted jointly.

"Under such a contract each obligor is liable severally for the whole duty." Williston on Contracts, Rev.Ed., Volume 2, pp. 932, 933.

■ The following is quoted from the Restatement of the Law of Contracts, § 114: "Where two or more parties to a contract promise the same performance to the same promisee in such words as apart from other promises made by them would bind them jointly, and in the same contract promise separately that this performance shall be rendered, they are jointly and severally bound."

Bennett v. Townsend, 1 Neb. 460, was an action on a joint and several promissory note made by the defendants. Summons was served upon only two of the three named defendants, and a default judgment was entered against only those defendants who were served. On proceedings in error, these defendants claimed that the judgment could be entered only against all or none of the defendants.

The Supreme Court held that judgment against only those defendants who had been served with process was proper.

Section 25-320 of the Revised Statutes of Nebraska, 1943, dealing with procedure in the district courts, states: "Persons severally liable upon the same obligation or instrument, including the parties to bills of exchange and promissory notes, may, all or any of them, be included in the same action, at the option of the plaintiff."

Additional authority on the question of parties in an action on a joint and several undertaking is found in McAlister v. Fidelity & Deposit Co. of Maryland, D.C.S.C. 1941, 37 F.Supp. 956.

The first headnote for the case states: "A sheriff and his deputy were not 'necessary parties' and 'proper parties' to an action against surety on sheriff's joint and several bond, since where the liability on a bond is joint and several all who are liable may be joined, or one or more or any number less than all may be sued at the option of the plaintiff, and an action may be maintained against the sureties, or one or more of them without joining the principal, or against the principal alone as well as against the principal in conjunction with any of the sureties, as the plaintiff may decide."

Attention is especially directed to the fact that the court in the McAlister case was referring to a South Carolina statute containing substantially the same language as that used in Sec. 25-320 of the Revised Statutes of Nebraska, 1943.

Stearns on the Law of Suretyship, 4th Edition, at p. 235 states: "In a state where principal and surety are in law joint and several contractors and obligors, the surety's obligation is not that of an indemnitor, or of a collateral guarantor, against whom no action can be brought without demand or notice, or until after failure to collect from the principal. The obligation is an absolute and unconditional one, binding both principal and surety for the full performance of each and every term, condition and requirement of the contract. A joint or a separate action might at common law and under the statute be brought thereon."

It seems proper to add that none of the cases cited in the defendants' briefs deal with the joinder of parties in an action on a joint and several obligation.

■ Under Nebraska law, which is controlling in determining questions concerning the obligations of the sureties on the bonds now in issue, State of Missouri ex rel. and to Use of De Vault v. Fidelity & Guaranty Co. of New York, 8 Cir., 107 F. 2d 343, it thus appears that the principal, W. L. Boettcher, or his representatives, are proper but not necessary or indispensable parties to an action on the bonds.

Subsection (c) of Rule 19 provides: "In any pleading in which relief is asked, the pleader shall set forth the names, if known to him, of persons who ought to be parties if complete relief is to be accorded between those already parties, but who are not joined, and shall state why they are omitted."

Moore's Federal Practice, Vol. 2, p. 2163, refers to sub-section (c) in the following language: "The substance of subdivision (c) appeared as the fourth requisite of Equity Rule 25, 28 U.S.C.A. § 723 Appendix, but the statement in the equity rule has been clarified in line with the construction of the equity rule, and in line with Federal Rules 19 and 20 so that it is clear that the names of omitted persons and reasons for non-joinder are to be pleaded only when such persons are *conditionally necessary*. Instead of the latter phrase Equity Rule 25 had referred to the omitted persons as proper parties. But that phrase had been construed to mean conditionally necessary. Proper parties under the Federal Rules are parties who *may* be joined at the election of the proponent of a claim. That involves the principle of permissive joinder, which is governed by Rule 20. Where permissive joinder is involved no statement of omitted persons or reasons for non-joinder need, of course, be made."

■ The joinder of W. L. Boettcher, or his representatives, being a matter of permissive joinder under Nebraska law, it is concluded that sub-section (c) does not require that plaintiff state in the complaint why they were omitted.

■ Before considering the remaining arguments which have been advanced in the briefs, it is again stated that in these actions, where federal jurisdiction rests on diversity of citizenship, the matter of the nature and extent of the liability of the sureties is to be determined in accordance with the law of Nebraska, State of Missouri ex rel. and to Use of De Vault v. Fidelity & Casualty Co. of New York, 8 Cir., 107 F.2d 343, and that it is the duty of the federal court to ascertain what that law is from all available data. West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956. The weight to be accorded to commissioners' opinions which may be cited in this memorandum is determined by the rule that: "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by

other persuasive data that the highest court of the state would decide otherwise." West v. American Telephone & Telegraph Co., 311 U.S. at page 237, 61 S.Ct. at page 183, 85 L.Ed. 139, 132 A.L.R. 956, and cases there cited.

■ In Yoder v. Nu-Enamel Corp., 8 Cir., 117 F.2d 488, 489, at page 489, the rule was thus stated: "In the application of a state statute, the federal courts are, of course, bound by the construction made by the courts of the state. Senn v. Tile Layers [Protective] Union, 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. 1229. And the obligation to accept local interpretation extends not merely to definitive decisions, but to considered dicta as well. Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610; Badger v. Hoidale, 8 Cir., 88 F.2d 208, 109 A.L.R. 798. Indeed, under the implications of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and West v. American Telephone & Telegraph Co., [311 U.S. 223,] 61 S.Ct. 179, 85 L.Ed. 139, [132 A.L.R. 956,] where direct expression by an authorized state tribunal is lacking, it is the duty of the federal court, in dealing with matters of either common law or statute, to have regard for any persuasive data that is available, such as compelling inferences or logical implications from other related adjudications and considered pronouncements. The responsibility of the federal courts, in matters of local law, is not to formulate the legal mind of the state, but merely to ascertain and apply it. Any convincing manifestation of local law, having a clear root in judicial conscience and responsibility, whether resting in direct expression or obvious implication and inference, should accordingly be given appropriate heed."

Generally, the remaining propositions and arguments advanced in the plaintiff's briefs will, for convenience, be considered before referring to the contentions urged by the defendants.

The plaintiff's first contention that the treasurer's obligations and the liability of the sureties on his bonds are matters to be measured and determined by the express provisions of the bonds, and relevant statutes, is supported by the Nebraska cases.

It is the settled rule in Nebraska that statutory provisions pertaining to the liabilities and duties of a public officer enter into and become a part of the contract or undertaking evidenced by the officer's bond. In Holt County v. Scott, 53 Neb. 176, 73 N.W. 681, then Judge Harrison, when considering the liability of the sureties on a county treasurer's bond, said at pages 685, 686 of 73 N.W.: "We will here again call to notice the rule that, when these parties defendant herein signed this bond as sureties, they did it, or it must be presumed or considered that they acted, in contemplation of all the laws then existing which were applicable to and governing transactions of the nature of the one in hand, and with knowledge that all such laws and rules of law entered into and became a part of the contract, which, by the signing, they indorsed as their agreement."

The same rule was announced with respect to the bond of an assistant in a county treasurer's office in United States Fidelity & Guaranty Co. v. McLaughlin, 76 Neb. 307, 107 N.W. 577, at page 578, where Commissioner Epperson said: "The bond in controversy was given for the faithful performance of the duties of one who was intrusted with funds belonging to the state and county. The rules governing such instruments are the statutory provisions fixing the liability of public officers, and the law pertaining thereto enters into and becomes a part of the contract. Holt County v. Scott, 53 Neb. 185, 73, N.W. 681." (This opinion was rendered in 1906—at a time when the statutes pertaining to the Supreme Court Commissioners did not contain "unofficial" provisions.) On re-hearing, 76 Neb. 307, 109 N.W. 390, a judgment for plaintiff was again affirmed.

The same reasoning was followed in the more recent case of Village of Hampton v. Gausman, 136 Neb. 550, 286 N.W. 757, where the Supreme Court, citing the Scott and McLaughlin cases, held at page 760 of 286 N.W. that Section 12-112 of the Compiled Statutes of Nebraska, 1929, providing that official bonds shall be obligatory upon the principal and sureties for the faithful discharge of all duties required by law of the principal, constituted, by construction, a part of the bond of a village treasurer,

and that the scope of the statutory obligation could not be limited by any provision in the bond.

In 43 Am.Jur. at pp. 180, 181, it is said:

"The liability of both the principal and surety in an officer's bond must be measured by the terms of the instrument when construed with reference to the purposes contemplated by the law requiring the bond. Since bonds of public officers are statutory, all the provisions of the statute are written into them, and the sureties are considered as having known the law and as having made their engagements in reference thereto. And so, words relating to the officer's duty which are by statute prescribed to be included as part of the condition of his bond, but which have been omitted therefrom, may be regarded as having been intended to be included, so as to justify reading them in for the purpose of determining liability, even though the omitted words are not of a cumulative nature. * * *

"Sureties on official bonds, as on other bonds, undertake within the terms of the bond to make good the defaults of the principal. Their engagement rests on the same legal obligation as is by law imposed on the officer himself. Their obligation is generally restricted to the term of the officer covered by the instrument, and to the officer's acts and defaults in respect to matters germane to the office. Whatever is a breach of the conditions of the bond as regards the principal is equally so as to the sureties, and the latter may plead anything which the officer might plead in his denial of liability on the bond."

However—"A surety on an officer's bond, like other sureties, is a person favored by the law, and his obligation cannot be extended by implication or construction. He is entitled to stand on the very terms of the undertaking, and to the extent, in the manner, and under the circumstances pointed out in his obligation he is bound, and no further."

I quote again Section 12-103 and Section 12-112 of the Compiled Statutes of Nebraska, 1929:

"All official bonds of county, township, school district and precinct officers must be in form, joint and several, and made paya-

ble to the county in which the officer giving the same shall be elected or appointed, in such penalty and with such conditions as required by this article or the law creating or regulating the duties of the office." Section 12-103, Compiled Statutes of Nebraska, 1929.

"All official bonds shall be obligatory upon the principal and sureties, for the faithful discharge of all duties required by law of such principal, for the use of any persons injured by a breach of the condition of such bonds." Section 12-112, Compiled Statutes of Nebraska, 1929.

Under Nebraska law, as declared in Section 12-112, and the Nebraska cases previously cited in this memorandum, the bonds furnished by W. L. Boettcher as county treasurer must be considered as securing the faithful discharge of the duties imposed upon him by law, including his duties in connection with the collection of taxes on personal property. In fact, one of the express conditions of the bonds is that the principal "shall faithfully and impartially, without fear, favor, fraud or oppression, discharge all other duties nor or hereafter required of him as such officer by law."

What, under Nebraska law as it existed when W. L. Boettcher was in office, were the duties required by law of a county treasurer with respect to collecting taxes on personal property?

Under Section 77-1901 of the Compiled Statutes of Nebraska, 1929, it is provided in part, that "The country treasurers of the several counties of this state shall be ex-officio county collectors of all taxes levied within their respective counties."

"77-1806. Same, When Delivered, Warrant for Collection. The tax list shall be completed and delivered to the county treasurer on or before the first day of November annually, and before its delivery the county clerk shall attach a warrant under the seal of the county, which warrant shall be signed by the clerk and shall in general terms command the treasurer to collect the taxes therein mentioned according to law; but no informality therein, and no delay in delivering the same after the time above specified, shall affect the validity of any taxes or sales, or other proceedings for the collection of taxes as provided for in this chapter. * * *"

"77-1910. Personal Taxes, Charged to Treasurer, Upon Delivery of Tax List. Upon delivery to the county treasurer of the tax list, as herein provided, all personal taxes levied in the county shall be charged to him and he and his bondsmen shall be liable therefor, unless the same are collected or he shall show a compliance with the requirements herein made." (This section was amended in 1937 and 1939 by the addition of provisions which do not appear to be relevant to the instant case, and which have not been mentioned in the briefs.)

"77-1915. Delinquent Personal Taxes, Notice, Collection. The county treasurer is hereby required, during the month of December of each year after the personal taxes for the year have become delinquent, to notify by mail all persons of the amount of their delinquent personal tax, and that unless the same is paid by February first next following, distress warrant will be issued therefor. The treasurer shall, on and after the first day of February next after the personal taxes for the last preceding year have become delinquent, collect the same, together with interest and costs of collection, by distress and sale of personal property belonging to the person against whom levied in the manner provided by law for the levy and sale of personal property on execution. Distress warrants shall be issued against all persons having delinquent personal tax for each year, and each such warrant shall include all delinquent personal taxes of the person against whom issued, unless such person shall, on or before February 1st, file with the treasurer an affidavit that he is unable, by reason of poverty, to pay any such tax, in which case distress warrants shall not issue until ordered by the county board." (This section was amended in 1933 by postponing the time for issuing distress warrants until March 1st in each year, and was again amended in 1943 by postponing the issuing of such warrants until after July 1st of each year.)

"77-1918—Personal Tax List, County Treasurer Records in Book. The county treasurer shall, in a book containing the personal tax list in columns provided there-

for, keep a record of the date of issue of each distress warrant, and of the return thereon showing in detail the amount collected, or the fact that no personal property belonging to the tax delinquent was found, and all distress warrants shall upon their return be filed and kept by the treasurer as a part of the records of his office. The collection of any item of said taxes, or the showing by affidavit of poverty as herein provided, duly approved, or the return of a distress warrant showing no property found, shall relieve him and his bondsmen from responsibility of that item of taxes. Upon the return as aforesaid of any distress warrant uncollected it shall be the duty of the treasurer, when directed so to do by the county board, to commence suit and prosecute the same to judgment and no property whatever shall be exempt from levy and sale upon process issued on such judgment."

"77-1926. Tax on Personalty, When Stricken From List. Whenever it shall appear from the return of the treasurer that any person charged with taxes on personalty has removed out of the county, or has deceased and left no property out of which the taxes can be paid, or if from any cause it is impossible to collect such taxes, it shall be the duty of the county board to cause the same, after the expiration of two years, in which the treasurer shall use due diligence to collect the same to be stricken from the tax list, and the county clerk shall certify the amount so striken off to the auditor who shall credit the county therewith in adjustment of the accounts of the county treasurer * * *."

"77-1930. Personal Property Tax, Statement of Uncollected Taxes Prepared by Treasurer and Filed with Clerk, Detailed List of Assessment Errors. On or before the first day of October annually, and at such other times as the county board may direct, the county treasurer shall make out and file with the county clerk a statement in writing, setting forth in detail the name of each person charged with personal property tax which he and his deputies have been unable to collect by reason of the removal or insolvency of the person charged with such tax, the value of the property and the amount of tax, the cause of inability to collect such tax, in each separate case, in a column provided in the list for that purpose. * * *"

"77-1931. County Treasurer, Settlement with County Board, Credit on Delinquent Taxes, When Made, When Allowed. * * * The county treasurer shall settle with the county board on the first Wednesday after the first Tuesday in January, and on the first Monday in July in each year, and at such other times as the county board may direct, at which times the county treasurer shall file with the county clerk a statement showing the amount of money collected since last settlement, from what source derived, amount of moneys paid out, and for what purpose, together with the vouchers for the same, the amount of taxes due and unpaid and the amount of money on hand belonging to the several funds; but the county treasurer shall not be entitled to credit for delinquent personal property tax until he has filed with the clerk an affidavit that he has fully complied with the provisions of this chapter (article) relating to the giving of notice and issuing of distress warrants, and been unable to collect the tax due thereon by reason of a want of personal property of the owner thereof, and that to the best of his knowledge and belief no personal property of any such owner is in the county." (This section was amended in 1937, 1939 and 1941, but such amendments do not appear to be material in the instant case, and have not been mentioned in the briefs.)

In view of the express and mandatory language of these statutes, especially 77-1915, 77-1918 and 77-1931, which appear to vest no discretion in the treasurer, it must be concluded that the duties required by law of W. L. Boettcher as county treasurer with respect to the collection of taxes on personal property included:

(1) Mailing a written notice during the month of December in each year to all persons owing delinquent personal taxes for that year, stating the amount of the delinquent taxes, and that, unless they are paid by February first next following, a distress warrant would be issued therefor, and

(2) Issuing distress warrants on and after the first day of February (March in

1933 and subsequent years of his term) for the collection of taxes on personal property, if such taxes had not been paid by the first day of February in the year following that in which the taxes became delinquent. Section 77-1915.

Reverting back to Section 77-1910, it will be observed that this section expressly provides that the treasurer and his bondsmen shall, upon delivery of the tax list to the treasurer, be liable for all personal taxes levied in the county "unless the same are collected or he shall show a compliance with the requirements herein made."

 In the absence of evidence to the contrary, a public officer is entitled to the presumption that he has faithfully performed the duties of his office, Paxton v. State, 59 Neb. 460, 81 N.W. 383, at page 387, 80 Am.St.Rep. 689; City of Scottsbluff v. Southern Surety Company, 124 Neb. 260, 246 N.W. 346, and such presumption enures to the benefit of his sureties, Murfree on Official Bonds, p. 403. If the evidence establishes that W. L. Boettcher neglected or failed to perform the foregoing statutory duties, and that there was no legally sufficient justification for these omissions, such neglect or failure constituted a breach of his statutory duties, and the condition of the bonds given to secure the faithful performance thereof, rendering the principal and sureties liable under the express provisions of Section 77-1910, for the amount of the uncollected taxes charged to the principal on the tax list delivered to him, unless "he shall show a compliance with the requirements herein made."

"The primary duty of a tax collector is, as the title of his office implies, the collection of taxes and a failure to perform this is a plain breach of his official·bond." 51 Am.Jur. 875.

Taxes should be collected promptly, and if the collector fails to enforce their payments within the period·of time prescribed, through a levy or by way of distress or execution upon the real or personal property, whereby the taxes are lost, he is liable therefor." 51 Am.Jur. 872.

 Under Nebraska law, it is the duty of the surety on a county treasurer's bond to see that the duties of the treasurer are properly discharged. Bush v. Johnson County, 48 Neb. 1, 66 N.W. 1023, at page 1027, 32 L.R.A. 223, 58 Am.St.Rep. 673.

"In general, where the law defines the duties of a public officer, his sureties are responsible for the faithful performance thereof, and are liable for wrongful acts in the discharge of his official duties, or for his failure to perform the duties imposed upon him, provided, of course, injury proximately results, but are not liable for acts which do not pertain to his official duties, unless they give their assent thereto." 43 Am.Jur. 187, 188.

In United States Fidelity & Guaranty Co. v. Bates, 139 Neb. 131, 296 N.W. 560, at page 563, the Supreme Court of Nebraska said: "The same authorities (referring to Nebraska cases previously cited) also announce the rule that for all wrongful acts or omissions of a public officer within the limits of what the law authorizes or enjoins upon him as such officer his sureties are liable."

This rule was stated by Commissioner Ragan in State v. Moore, 56 Neb. 82, 76 N.W. 474, at page 476, and quoted by Judge Sullivan in Blaco v. State, 58 Neb. 557, 78 N.W. 1056, at page 1059.

Defendants urge, and plaintiff concedes, that the county treasurer is not an insurer of the collection of taxes, but is responsible only for the exercise of due diligence. The statutes previously quoted in this memorandum do not have the effect of making the treasurer an insurer of collection. In fact, it is expressly provided in Section 77-1918, dealing with the treasurer's records of delinquent personal taxes, that " * * * the collection of any item of said taxes, or the showing by affidavit of poverty as herein provided, duly approved, or the return of a distress warrant showing no property found, shall relieve him (the treasurer) and his bondsmen from responsibility of that item of taxes. * * *"

Section 77-1926 provides that under certain circumstances it shall be the duty of the county board to cause uncollected personal property taxes, after the expiration of two years in which the treasurer shall use "due diligence" to collect the taxes, to be stricken from the tax list.

Assuming that the treasurer's duty in attempting to collect taxes is to be measured in terms of "due diligence", what does the quoted term require?

No Nebraska case has been found in which the court has defined the meaning of this term as applied to the performance of a statutory duty. The Supreme Court of Missouri in State ex rel. and to Use of City of St. Louis v. Priest, 348 Mo. 37, 152 S.W. 2d 109, said that "due diligence" on the part of a clerk of the circuit court, whose statutory duty included the issuance of execution on judgments when requested to do so by the holders, required the clerk to perform such acts as he was required to perform by law with reasonable celerity and within a reasonable time. It would not seem to require a citation of authorities to support the conclusion that, in the absence of a sufficient justification, the failure of a county treasurer to perform within a reasonable time such acts as are expressly enjoined upon him by statute, with respect to collecting taxes, constitutes a lack of "due diligence". That there may have been a socalled usage or custom not to perform these duties would not excuse the treasurer's failure to perform them, or his performance thereof in a manner other than that prescribed by statute. Shambaugh, County Treasurer, v. City Bank of Elm Creek, 118 Neb. 817, 226 N.W. 460, 65 A. L.R. 804.

"Nor can he (the treasurer) answer for a neglect of duty in attempting to collect by showing that the poverty of the person taxed would probably have made the attempt ineffectual; his duty is to exhaust his power under the warrant and the legal evidence of the inability of the person taxed to pay the amount charged against him will then be furnished by his official return." Cooley on Taxation, 4 Ed., Vol. 3, p. 2698.

However, quoting headnote 6 in Sharp v. Brown, 38 Idaho 136, 221 P. 139, it has been said: "Statutes define the duties of public officers in general terms, and must always be construed with regard to the ever-changing conditions in human affairs, which may not have been fully anticipated or provided for in such statutes. A public officer should not be removed from office under C.S. § 8684, (providing for removal of public officers who have refused or neglected to perform their official duties) unless he has refused or neglected to perform an official duty pertaining thereto in some substantial respect, which under existing conditions would lead all reasonable minds to conclude that the act complained of was an intentional violation of law. A reasonable effort to perform the duties pertaining to public office is all the law requires."

That no additional compensation was allowed by law to W. L. Boettcher for extra work in notifying delinquent tax debtors and issuing distress warrants would not constitute a defense to failure to perform these duties, since a public officer must discharge all the duties pertaining to his office for the compensation allowed by law. Stoner v. Keith County, 48 Neb. 279, 67 N.W. 311. And where the statutes do not expressly authorize a charge for services performed by a public officer, such services must be performed gratuitously. State ex rel. Axen v. Meserve, 58 Neb. 451, 78 N.W. 721, and cases there cited.

On re-hearing in the case of County of Logan v. Carnahan, 66 Neb. 685, at page 711, 92 N.W. 984, 95 N.W. 812, 819, (an action by the county to collect real estate taxes by foreclosure and sale) Judge Holcomb said: "Ordinarily the treasurer of a county is the trustee and agent of the state and its subdivisions for the collection of taxes. This has been frequently determined by the prior decisions of this court."

The high degree of responsibility imposed upon a county treasurer is illustrated by the Nebraska cases holding that he is liable as an insurer for the loss of public funds coming into his hands by virtue of his office, except as modified by statutes or where the loss is occasioned by an act of God or public enemy. State ex rel. Craig v. Sheldon, 10 Neb. 452, 6 N.W. 757; Bush v. Johnson County, 48 Neb. 1, 66 N.W. 1023, 32 L.R.A. 223, 58 Am.St. Rep. 673; Garfield County v. Pearl, 138 Neb. 810, 295 N.W. 820.

That a public officer and the sureties on his official bond are liable for loss sus-

tained by the county because of the officer's negligence was recognized in Toncray v. Dodge County, 33 Neb. 802, 51 N. W. 235, where the Supreme Court affirmed a judgment against a clerk of the district court and the sureties on his official bond for damages caused by the loss of records which the clerk had failed to place in a fireproof vault. Referring, 51 N.W. at page 236, to the statutes providing that official bonds shall be obligatory upon the principal and sureties for the faithful discharge of all duties required by law of the principal, the court said that whether the clerk had faithfully performed his duties in leaving the records out of the vault was a question of fact.

I quote again the condition of the bonds in the instant case providing that the principal "shall faithfully and impartially, without fear, favor, fraud or oppression, discharge all other duties now or hereafter required of his office by law."

Referring to the meaning of "faithful" as used in a school district treasurer's bond, which under Section 79-404 of the Compiled Statutes of 1929 was required to be conditioned for the faithful discharge of the duties of his office, Chief Justice Simmons in Thurston County v. Chmelka, 138 Neb. 696, 294 N.W. 857, at page 863, 132 A.L.R. 1077, said: "This is a guaranty not only of his personal honesty, but also a guaranty of his competency, skill and diligence in the discharge of his duties. Fiala v. Ainsworth, 63 Neb. 1, 88 N.W. 135, 93 Am.St.Rep. 420. 'The rule for the interpretation of bonds seems to be that, when a public officer gives a bond for the faithful discharge of his duties, the word "faithful" is held to imply that he has assumed that measure of responsibility laid on him by law, had no bond been given; that the object of a bond so conditioned is to get sureties for the performance of the duties of the office according to law, and that *everything is unfaithfulness which the law does not excuse.*'" citing cases.

The plaintiff has cited Village of Olean v. King, 116 N.Y. 355, 22 N.E. 559. This case has been cited by the Supreme Court of Nebraska in a number of cases. Paxton v. State, 59 Neb. 460, 81 N.W. 383, 80

Am.St.Rep. 689; Blaco v. State, 58 Neb. 557, 78 N.W. 1056, and School District No. 30 of Cuming County v. Cuming County, 81 Neb. 606, 116 N.W. 522 (opinion by Commissioner Epperson—rendered in 1908 when the statutes concerning the Supreme Court Commission did not contain the "unofficial" provision). Since the reasoning of that part of the opinion in the Olean case holding that a collector who has collected taxes levied under an unconstitutional act of the legislature may not question the right of the proper authorities to receive payment of the funds so collected, appears to have been approved by Commissioner Epperson in the Cuming County case, this memorandum will be extended by setting forth the facts and part of the reasoning of the court in the Olean case.

In the Olean case, one King, after being appointed village tax collector, gave a bond conditioned that the principal "shall faithfully discharge the duties of said office, and honestly and faithfully account for and pay over all money received by virtue of his office". Under the statutory provisions of the village charter, a duty was imposed upon the collector to collect all taxes specified in the tax-roll delivered to him by the village board of trustees with their warrant attached, within the time named in the warrant, and to pay over to the village treasurer, as often as prescribed in the warrant, all money collected by the collector. Upon the expiration of the warrant, it was the collector's duty to return it to the board with a certified account of the money collected and an itemized account of unpaid taxes. After the board of trustees had delivered to the collector a tax-roll calling for the collection of approximately $21,000.00, the collector collected and paid over to the treasurer approximately $16,000.00 in taxes but failed to return the warrant or to make an account of the money collected, or to return an itemized account of unpaid taxes. The village then brought an action against the collector and his sureties to recover the difference between the amount of the taxes called for by the warrant and the amount of money which the collector had paid over to the treasurer.

492

On appeal from a judgment on a directed verdict for the amount claimed, defendants urged:

(1) That the evidence did not show that the collector had failed to pay over any taxes collected by him, and that a failure to return the warrant with an account, as required by statute, inflicted no loss on the village;

(2) That the sureties were discharged by an extension of time for return of the warrant, and

(3) That the taxes levied were invalid and that therefore the collector was not liable for failure to collect part of the taxes.

The New York Court of Appeals rejected all of these contentions saying that upon the collector's failure to make an account of unpaid taxes, the city sustained a loss equal to the amount thereof, and that, by the collector's failure to return the warrant, the village had been deprived of its statutory right to attempt to collect the taxes by an action against those upon whom the taxes were levied, or against the real estate upon which the taxes were a lien. The court also said, 22 N.E. at page 560, that, in the absence of any evidence to the contrary, the amount of injury sustained by the village was the amount of the uncollected taxes and that "he (the collector) has but to comply with the very simple provision of the statute, and render his account, to exonerate himself, and relieve his sureties from liability. He stands charged, in the first instance, with the total tax of the village, and receives credit, upon the return of the warrant, for all taxes collected and paid over to the village, and all specified in his account as unpaid."

At pages 560 and 561, of 22 N.E., the court said:

"He (the collector) was required to execute a bond, conditioned, among other things, that he would faithfully discharge the duties of his office; and the bond in suit was in strict compliance with the provisions of the charter in this respect. The obligation of the sureties was not, therefore, limited to the collection of the particular tax in question, or to the performance of the collector's duty under the warrant of July 11th, but included all duties which, by virtue of his office, fell to the collector during his term of office. * * *

"Bonds of this character must be construed in such way as to secure the fidelity of the officer under the law; and the regulations as to the time within which the taxes shall be collected, and the warrant returned, are mere directions to the collector as to the manner of performing the duties of his office, and are not essential parts of the contract with the sureties."

The plaintiff, in support of its argument concerning the construction of the bonds, cites Northern Assurance Company v. Borgelt, 67 Neb. 282, 93 N.W. 226. This case deals with the question of when a cause of action on an official bond accrues and, for that reason, will be referred to in a subsequent part of this memorandum.

Plaintiff also cites and quotes the first syllabus in Fiala v. Ainsworth, 63 Neb. 1, 88 N.W. 135, 93 Am.St.Rep. 420, stating: "A condition in the bond of an assistant cashier of a bank that he will 'honestly, faithfully, and *efficiently* discharge the duties of such position' is a guaranty not only of the personal honesty of such officer but also a guaranty of his competency, skill, and diligence in the discharge of his duties." (Emphasis added.)

The cases cited by defendant National Casualty Company,[1] while supporting the proposition that a collector of taxes is not an insurer of collection, recognize in express language that a collector may be liable for taxes which are lost to the public body as a result of the collector's negligence or remissness, and that where the statutes prescribe the manner in which a collector may relieve himself from liability for uncollected taxes, such statutes must be complied with by a collector seeking to avoid liability for taxes which are not collected.

---

[1] Town of Enfield v. Hamilton, 112 Conn. 314, 152 A. 285; United States v. Thomas, 82 U.S. 337, 15 Wall. 337, 21 L.Ed. 89; Inhabitants of Colerain v. Bell, 9 Metc., Mass., 499; Shanahan v. State, 142 Md. 616, 121 A. 636; Thompson v. Henderson, 155 Md. 665, 142 A. 525, 58 A.L.R. 1213.

In one of the cited cases, United States v. Thomas, 82 U.S. 337, at page 347, 15 Wall. 337, at page 347, 21 L.Ed. 89, Justice Bradley, after referring to collectors of public money as bailees, said: "But they are special bailees, subject to special obligations. It is evident that the ordinary law of bailment cannot be invoked to determine the degree of their responsibility."

■■■■■ It is not believed that these cases affect the conclusion previously reached that "due diligence" on the part of a collector requires that he perform, within a reasonable time, those duties which are imposed upon him by statute with respect to the collection of taxes.

While the defendant, National Casualty Company, has on page 4 of its brief referred to numerous cases[2] dealing with when a collector and his sureties are relieved from liability for the non-collection of taxes, whether and to what extent they may be relieved from liability in the instant actions will necessarily depend upon the evidence adduced.

The plaintiff's second major contention is that the sureties on the bonds given by a county treasurer for his second term of office are liable for taxes recharged to him on a tax list which he neither collects nor attempts to collect in the manner prescribed by statute. In other words, it is the plaintiff's theory that there was a duty resting upon W. L. Boettcher, at the conclusion of his first term, to account for uncollected taxes which were then due and delinquent, and that, as successor to himself, W. L. Boettcher and the sureties on his bonds for the second term assumed and accepted the duties of such term, including the duty of accounting for taxes which were not collected during the first term.

This argument is based upon an attempted analogy with what plaintiff refers to as the weight of authority holding that sureties on a second bond are liable for public money which a tax collector has in his hands, but has not accounted for at the beginning of his second term.

All of the cases cited by plaintiff[3] in support of this argument are readily distinguishable from the instant actions.

First, an examination of these cases shows that they involved the liability of sureties on bonds covering a second term for funds which had actually or constructively been received by an officer during his first term, as distinguished from failure of an officer to perform some statutory duty, such as collecting taxes, during his first term of office.

■■■■■ Second, the cases fall within the rule that the sureties on an official bond furnished by a public officer for his second term are liable for public funds which are in the officer's hands upon the expiration of his first term, and for which he must account during his second term. Many of these cases come under the rule that there is a presumption, in the absence of evidence to the contrary, that an officer who has collected public funds during his first term but who has not then paid them over to the proper authorities, has not misappropriated the funds, but has them on hand at the expiration of his first term, thereby rendering the sureties on his bond for the second term liable for the performance of the officer's obligation to account for the funds during his second term. However, when it is established that an officer has misappropriated public funds during his first term, the cited cases support the rule that the sureties on a bond covering his

[2] Stearnes v. Edmonds, 189 Ala. 487, 66 So. 714; Town of Enfield v. Hamilton, 112 Conn. 314, 152 A. 285; Inhabitants of Colerain v. Bell, 9 Metc., Mass., 499; Shanahan v. State, 142 Md. 616, 121 A. 636; Inhabitants of Harpswell v. Orr, 69 Me. 333; Montgomery v. Governor, 7 How., Miss., 68; Carl v. Thiel, 211 Ky. 328, 277 S.W. 485.

[3] Walker County, Ala., v. Fidelity & Deposit Co., 5 Cir., 107 F. 851; Lake County v. Neilon, 44 Or. 14, 74 P. 212; Haley v. Petty, 42 Ark. 392, 393; City of Hartford v. Franey, 47 Conn. 76; McWhorter v. Chattooga County, 154 Ga. 289, 114 S.E. 203; Castor's Appeal, 2 Penny., Pa., 337; Miller v. Moore, 3 Humph., Tenn., 189; Tinsley v. Rusk County, 42 Tex. 40; Board of Education of Spencer District of Roane County v. Cain, 28 W.Va. 758; Cook v. Commissioners of Houston County, 62 Ga. 223; Bush v. Johnson County, 48 Neb. 1, 66 N.W. 1023, 32 L.R.A. 223, 58 Am. St.Rep. 673.

second term are not liable for such funds, unless the officer has, during his second term, been guilty of making further misappropriations to apply on his previous defaults.

"Stated otherwise, where the officer fails to account for and pay over to his successor the funds chargeable to him as shown by his books and final account, the sureties on the last bond are prima facie liable therefor, and to relieve themselves they must show that the defalcation in fact occurred during a prior term." 43 Am.Jur. 211.

The rule as thus quoted has been recognized in at least two early Nebraska cases, Van Sickel v. Buffalo County, 13 Neb. 103, 13 N.W. 19, 42 Am.Rep. 753, and Clark v. Douglas, 58 Neb. 571, 79 N.W. 158. (The Van Sickel case involved a county treasurer's bond having the same conditions as those in the instant actions.)

Plaintiff places special reliance on Bush v. Johnson County, 48 Neb. 1, 66 N.W. 1023, 32 L.R.A. 223, 58 Am.St.Rep. 673. In this case, one Bush, when entering upon his duties as county treasurer, accepted from his predecessor certain certificates representing deposits of county funds in a bank. The funds were left on deposit with the bank, Bush having accepted from the bank a new certificate of deposit payable to himself as county treasurer. Before the expiration of his first term of office the bank failed. The county thereafter brought an action against Bush and the sureties on the bond covering his first term to recover the amount lost by reason of the failure of the bank. In holding that the sureties were liable, the court, quoting from the opinion of Judge Harrison, 66 N.W. at page 1025, including that which is quoted in plaintiff's brief, said:

"The reception of this money from his predecessor was one of the duties which devolved upon the incoming treasurer, his due and proper performance of which, together with all others pertaining to the office, his sureties, by signing the bond, had guarantied. Giving the bond was one of the essential prerequisites of his assuming the office, and without which he could not legally do so; and the sureties, by their signatures, enabled him to meet this requirement, and to acquire title or right to this money; and, having acquired it, he and the bondsmen became liable to the county for it. The fact that he elected to take a certificate of deposit evidencing the indebtedness of a bank to his predecessor in office for the amount, instead of coin or currency, and to have the certificate canceled, and a new one issued, payable to himself as county treasurer, and to let the money remain in the bank, and to carry the sum thus treated in his accounts as such treasurer, as moneys or funds on hand, could in no manner or degree affect his liability, or that of his bondsmen. He became possessed of the right to $6,000 of the funds of the county, and liable for its safekeeping, and to account for it, and, at the request of the banker, left it in the bank. This was a sufficient reception by him of the money of the county to render him and his sureties liable for it under the conditions of this bond, within the rule announced in State v. Hill, 47 Neb. [456,] 66 N.W. 541."

With reference to the sureties' contention that Bush, by turning over the certificate of deposit to himself as his own successor at the end of his first term, released the sureties on the bond for the first term, Judge Harrison, after pointing out that the bank had failed before the expiration of the first term, said at page 1026 of 66 N.W.: "The failure to otherwise pay the sum expressed by the face of the certificate at the expiration of the first term of office was such a failure to faithfully discharge the duties of the office required by law, to faithfully account for and pay over all funds which had come into his hands or under his control by virtue of his office, as rendered him and the sureties for the first term liable therefor."

While the first of the foregoing quotations does contain language which appears to support plaintiff's argument that the sureties on a bond for a second term, by furnishing the bond and thereby enabling the principal to qualify for the office, assume a liability for taxes which the principal has failed to collect during his first term, the last two sentences in the first quotation shows that the court in the Bush

case was considering whether there had been a sufficient reception of the funds by the treasurer to render him and his sureties liable therefor.

In other words, this is a case involving the liability of a treasurer and his sureties for public funds which were considered as having been received by the former.

As stated in defendants' briefs, Nebraska follows the rule that a public officer who succeeds himself in office changes his official personality for each term in office. Each term is regarded as a separate and distinct entity. Thomssen v. Hall County, 63 Neb. 777, 89 N.W. 389, 57 L.R.A. 303; Thurston County v. Chmelka, 135 Neb. 342, 281 N.W. 628, and 138 Neb. 696, 294 N.W. 857, 132 A.L.R. 1077. (The opinion in the Thomssen case, which is by Commissioner Kirkpatrick, was filed in 1902—at a time when the statutes regarding the Commission did not contain the "unofficial" provision.)

From this rule, the defendants reason that the sureties on the bonds furnished by W. L. Boettcher in connection with his second term are not liable for taxes which became delinquent and remained uncollected during his first term.

The Thomssen case was an action against a county treasurer, who had served two successive terms, and the sureties on his bond covering the treasurer's first term, to recover county funds which had allegedly been converted by the treasurer. The action was commenced during the treasurer's second term. When the treasurer entered his office for the first term, he received from his predecessor a certain sum of county funds, which the treasurer permitted to remain on deposit in a bank, after having his predecessor's check for a portion of the funds certified by the bank. The bank failed within a few days after the commencement of the treasurer's first term. It also appears from the opinion that a bond furnished by the bank under the Depository Act had expired three days before the commencement of the treasurer's first term.

In affirming a judgment against the treasurer and his sureties, on the ground that the former was an insurer of funds coming into his hands by virtue of his office, and was liable for the loss of such money through the failure of the bank, unless the deposits were in conformity with the Depository Act, Commissioner Kirkpatrick, 89 N.W. at page 391, said:

"There can be no doubt that under the statute the term of office of Thomssen expired at the very latest when he gave his bond, and qualified and entered upon the discharge of the duties of the office as his own successor. It is equally certain that upon his qualification for his new term he was another and distinct officer, to the same extent as though some other person had succeeded him. The sureties on his bond given for his first term would not be liable for any act of misfeasance on his part during his second term, and his second-term bondsmen would not be liable for money which never in fact came into his hands from himself as his own predecessor. In the case of [President, etc., of Amherst] Bank v. Root, 2 Metc., Mass., 522, 536, it is said: 'If there be a re-election, it is in fact to another, and not the same, office,—such as the offices of treasurers of the state, counties, towns, and the like, where the office is created by law, and by the same law made annual.' In [Citizens' Loan] Association v. Nugent, [40 N.J.L. 215,] 29 Am.Rep. 230, it is said: 'A man who is re-elected to an office may be truly said to have changed his official personality. Such a person, with respect to his position, is another officer, and it is in this sense that a man is sometimes said in these cases to be his own successor.'"

The bond in question was conditioned: "'Now, if the said William Thomssen shall render a true account of his office, and of the doings therein, to the proper authorities, when required thereby or by law, and shall promptly pay over to the persons or officers entitled thereto all moneys which may come into his hands by virtue of his said office, and shall faithfully account for all the balances of money remaining in his hands at the termination of his office,' etc."

With reference to these provisions, the Commissioner said: "It will thus be seen that by the terms of his bond, as well as by the provisions of the statute, plaintiffs in error are liable to account for all moneys

coming into the hands of Thomssen as treasurer."

While the Thomssen case does, as previously quoted, refer to the matter of liability as between sureties on bonds covering successive terms, in view of the circumstances which were there involved, this case does not alone furnish "persuasive data" either one way or the other on whether the sureties on the bonds covering the second term of W. L. Boettcher are liable for taxes which were not collected during his first term. The case does support the conclusion that the treasurer and his sureties are bound to account for public funds, which come into the treasurer's hands during his first term, at the expiration of that term, notwithstanding that the treasurer becomes his own successor for a second term. The same rule is recognized by the Supreme Court in its first opinion in the Thurston County case, 135 Neb. 342, 281 N.W. 628, at page 629.

The question in the Thurston County case, which was before the Supreme Court on two occasions, the last opinion being reported in 138 Neb. 696, 294 N.W. 857, 859, 132 A.L.R. 1077, may be stated by quoting the first paragraph of the opinion: "A school district treasurer deposited funds of the district in a state bank operated by the Guaranty Fund Commission; the bank honored all withdrawals during the first term, and a balance remained on hand payable to the treasurer at the end of his first term. At that time the bank was probably insolvent, but had sufficient cash reserves to pay the treasurer's deposit had it been demanded. The treasurer succeeded himself in office, furnished the required bond, with different sureties, entered upon the duties of his office for the second term, did not require the payment to himself of the moneys on deposit, treated the deposits as money at the beginning of and during his second term, added deposits thereto, issued checks against the same, and generally exercised dominion and control over the deposit. The bank during the period of the second term was adjudged insolvent and was closed, and money was lost to the treasurer and the district. The question is presented: Are the treasurer and his surety for the second term liable for the loss? The conclusion is that they are liable."

The court, while stating the rule that a public officer serving successive terms changes his official personality for each term, held that the sureties on the bond covering the second term of the treasurer were liable for school funds deposited by the treasurer in a bank during his first term, and permitted to remain there until the bank closed during his second term. That the bank, although continuing to do business, was insolvent during the first term, and that the sureties on the bond for the first term might have been liable, was held not to relieve the sureties on the bond for the second term.

The holding is premised, at least in part, on the ground that the treasurer by treating the funds on deposit as funds of his office for the second term, had effected a transfer to himself as treasurer for the second term, thereby rendering himself and his sureties for that term liable for the loss. I quote from 294 N.W. at pages 861 and 862 of the opinion:

"When an officer, charged with the custody of public funds serves successive terms, the sureties upon the bond for the second term become prima facie responsible for such balance of the previous account as is chargeable to their principal, the presumption being that the officer has received in his new official capacity that which it was his duty to pay in his old, and that he has on hand all the funds with which he is chargeable. The burden of proving the contrary is upon the sureties on the second bond." (Citing cases)

"A transfer of the funds from a treasurer to himself has been made where a treasurer of public funds succeeds himself in office, furnishes the required bond with new sureties, has funds of his office on deposit in a bank, which, although insolvent, continues to do business, receiving deposits and honoring withdrawals, and the treasurer deals with such deposit as funds of his office for the second term, and the bank recognizes his continued authority and control over such funds. If a loss results, the treasurer and his surety for the second

term are liable unless it be shown that the loss was complete during the first term. To avoid this liability, it is necessary to show that the *particular deposit* could not and would not have been paid in money upon demand by the treasurer at the beginning of his second term. It is not sufficient for the surety on the bond for the second term to show that the bank was insolvent at the beginning of the second term and that its liabilities were in excess of its assets."

(Of course, by specifically alleging in the instant actions that certain sums of taxes were delinquent and uncollected in each of the years covered by the first term of W. L. Boettcher, plaintiff has precluded itself from the benefit of any presumption that funds representing such taxes were in the hands of W. L. Boettcher when he entered upon his second term in office.)

At page 863 of 294 N.W., the court in the Thurston County case said: "The obligee of the bond for the second term is not denied a right to recovery for a breach of duty during that term merely because there might have been a different breach of duty by the treasurer during the first term, arising out of the handling of the funds in such a manner that the surety of that term might be liable."

In view of the rule that the liability of sureties is ordinarily strictissimi juris, Murfree on Official Bonds, p. 477, and the Nebraska rule that an officer serving successive terms changes his official personality with respect to each term, and that each term is recognized as a separate and distinct entity, it is concluded that the instant actions are within the general rule that where an officer serving successive terms furnishes a separate bond for each term, the liability of the sureties on each bond is limited to defaults occurring within the term covered by the bond. Throop on Public Officers, pp. 220, 221, and 230.

Under the Nebraska law, sureties on an official bond for a second term are not ordinarily liable for the principal's defaults where the evidence shows that such defaults occurred during the first term. Van Sickel v. Buffalo County, 13 Neb. 103, 13 N.W. 19, 42 Am.Rep. 753; Paxton v. State, 59 Neb.

460, 81 N.W. 383, 80 Am.St.Rep. 689, affirmed on re-hearing 60 Neb. 763, 84 N.W. 254.

In the Van Sickel case, as reported in 13 N.W., Judge Cobb, after reviewing several cases, said at page 27: "I close the citation of authorities by quoting from a recent text-book: 'The general rule, that the liability of a surety is measured by the terms of his contract, applies in its full force to contracts of suretyship entered into in the form of official bonds. It is a clear proposition, on principle and authority, that the sureties on the bond of a public officer are liable only for defaults committed by him after the commencement of the term of office for which they became his sureties, and that if it should so happen that the same individual had previously held the same office under a prior appointment, and had committed defaults during the term of that appointment, those who were his sureties on such prior appointment must be looked to for such defaults, and not those who signed his bonds on his re-appointment. Their engagement is for his future and not his past conduct, and it would be a gross imposition upon them, in the absence of a special stipulation to that effect, to impart into their undertaking responsibility for prior delinquencies.' Baylies, Sureties & Guarantors, p. 150, § 9."

If, during his first term of office, W. L. Boettcher had misappropriated county funds, would the sureties for his second term be deemed to have assumed their principal's obligation to make restitution of such funds? On the basis of the Van Sickel and Paxton cases, the answer is "no". This conclusion answers plaintiff's contention that the sureties on the bond covering the second term of W. L. Boettcher, by enabling him to qualify for office, assumed liability for any alleged neglect or omission in failing to collect taxes which became delinquent during his first term in office.

"It is a well established rule that the operation of an official bond is not retrospective unless it is expressly stated to be so. The manifest object of all such obligations is not indemnity for the past, but security in future transactions, and any liability for the past is exceptional and must

be made to appear by distinct evidence." Murfree on Official Bonds, p. 143. See also 43 Am.Jur. 182.

■ Before taking up the question of limitations, consideration will be given to the argument at pp. 9 and 10 of the brief of New Amsterdam Casualty Company that Section 77-1910 of the Compiled Statutes of Nebraska, 1929, refers only to the tax list for the current year, and does not charge a treasurer and his sureties with all the taxes which have ever accumulated against a tax debtor.

"77-1910. Personal Taxes, Charged to Treasurer, Upon Delivery of Tax List. Upon delivery to the county treasurer of the tax list, as herein provided, all personal taxes levied in the county shall be charged to him and he and his bondsmen shall be liable therefor, unless the same are collected or he shall show a compliance with the requirements herein made."

No cases have been cited in support of this argument, and no direct authority thereon has been found. However, in view of the language of this section, and the express provisions of Section 77-1915 that distress warrants shall include all delinquent personal taxes of the person against whom issued, and of Section 77-1931 that the treasurer, with respect to his semi-annual settlements with the county board, shall not be entitled to credit for delinquent personal taxes until he has filed an affidavit in compliance with the statute relating to the giving of notice and the issuance of distress warrants, the liability fixed by Section 77-1910 may not be restricted to only the tax list for the current year.

There is no manifest intention to relieve the treasurer and his sureties from liability for uncollected taxes other than those of the "current year", when the treasurer has failed, without sufficient justification, to perform those acts which by statute relieve him and his sureties from liability for uncollected taxes.

■ ■ With respect to whether and to what extent, if any, recovery in the instant actions is barred by limitations, the general rule in Nebraska is that the statute of limitations commences to run when a cause of action accrues. Luikart v. Hoganson, 135 Neb. 280, 281 N.W. 27; J. H. Melville Lumber Co. v. Scott, 135 Neb. 379, 281 N.W. 803. The "accrual of a cause of action" means the right to maintain and institute a suit, and whenever one person may sue another, a cause of action has accrued, and the statute begins to run. Department of Banking v. McMullen, 134 Neb. 338, 278 N.W. 551; Barney v. City of Lincoln, 144 Neb. 537, 13 N.W.2d 870; Bend v. Marsh, 145 Neb. 780, 18 N.W.2d 106.

In the McMullen case, which was an action by the Department of Banking to recover damages for the making of excessive loans by bank directors, the court, speaking with reference to the accrual of the cause of action, at page 555 of 278 N.W. said: "We concede that there must be a wrong and damages as a consequence thereof, but the law cannot concede that no cause of action would arise until the damages could be exactly determined. The amount of damages recoverable may depend upon the damages incurred, but that does not toll the statute to await the accumulation thereof."

When, under the circumstances of the instant case, did the alleged cause of action accrue? In other words, when did the plaintiff have the right to institute and maintain an action against W. L. Boettcher and his sureties for the alleged breach of the conditions of the bonds?

It is not believed that the sections of the statutes cited by the defendant National Casualty Company[4] are material in determining the answer to this question. These statutes deal primarily with and concern settlements to be made by the treasurer for money which is in his hands.

■ The general rule is that a breach of a bond, conditioned for the due performance of duty, occurs and the cause of action accrues, when the duty is not duly performed. 46 C. J. 1078; Murfree on Official Bonds, p. 353.

The statute, Section 77-1915, imposing upon county treasurers the duty to issue

---

4 Comp.Stat.1929—Sections 77-1931, 77-1935, 77-1937, 77-1943, 77-1945, 77-1946, 77-1948, 77-1949, and 77-1950.

distress warrants, does not fix an exact time for their issuance but merely provides "on and after" the 1st day of February ("on the 1st day of March" in 1933 and succeeding years of the term of W. L. Boettcher) the treasurer shall collect taxes in the manner provided.

■ Generally, words used in statutes should be given their ordinary meaning. Borchert v. Bash, 97 Neb. 593, 150 N.W. 830, Ann.Cas. 1917A, 116; Lincoln Gas & Electric Light Co. v. Watkins, 113 Neb. 619, 204 N.W. 391.

"On", when used to indicate time, may mean within, during, coincident with or following. Webster's New International Dictionary, 2nd Edition, Unabridged.

"On", as used in a statute providing that it should be the duty of commissioners "on" receiving the report of viewers for the opening of a road to cause the report to be read before the commissioners' meeting, has been construed as meaning "on or within a reasonable time thereafter." Masters v. McHolland, 12 Kan. 17, 25.

"(Sec.306) b. Time of Performance. As a rule a statute prescribing the time within which public officers are required to perform an official act is merely directory, unless it denies the exercise of the power after such time or the nature of the act or the statutory remedy shows that the time was intended as a limitation." 46 C. J. 1037.

■ In view of the nature of the duties and work involved in connection with the issuance of distress warrants, especially in counties having a large population, the Legislature must necessarily have intended that "on and after" and "on", as used in these statutes regarding the issuance of distress warrants, should mean within a reasonable time, and that a county treasurer should have a reasonable time in which to perform these duties of his office.

Neither do the terms or conditions of the bonds furnished by W. L. Boettcher provide when or on what date he shall perform the duty of issuing distress warrants. In these circumstances, the applicable rule is that, unless otherwise provided, a public officer has a reasonable time within which to perform the duties of his office. Unless there is a provision making time of the essence, a contract is to be performed within a reasonable time. Mercer v. Payne & Sons Co., 115 Neb. 420, 213 N.W. 813.

In other words, W. L. Boettcher had a reasonable time within which to perform his statutory duties in connection with the collection of taxes, and may not be said to have been in default, thereby violating the conditions of his bonds and giving rise to the accrual of a cause of action thereon, until the expiration of a reasonable time.

■ What was a reasonable time within which to perform these duties will depend upon the circumstances as shown by the evidence, including the nature and extent of the duties and work to be performed in connection with issuing distress warrants; the time required by a reasonably prudent and diligent person in performing these duties, having regard for the possibility of loss to others; and whether sufficient funds and help were available for the performance of the work. Davis v. Godart, 147 Minn. 362, 180 N.W. 239; Kelley, Maus & Co. v. Hart-Parr Co., 137 Iowa 713, 115 N.W. 490; In re Hellams, D.C. Ala., 223 F. 460.

■ Of course, if W. L. Boettcher was unable to perform the duty of collecting taxes in any one year, he was obligated to attempt to collect such taxes in future years during his tenure of office.

■ If the evidence establishes that in any one or all of the years in question, W. L. Boettcher was furnished with sufficient facilities and funds with which to perform his duty but nevertheless and without other legal justification he failed to perform those duties within a reasonable time, there would then be a breach of his duties, and of the conditions of his bonds covering such years, thereby giving rise to the accrual of a cause of action rendering the sureties liable, within the limits of the bonds, to the extent of the loss to the plaintiff.

■ The rule then applicable may be that in case of repeated breaches of a bond, the statute of limitations runs from and after each occurs, and that, although a cause of action for one breach of condition is barred, an action may still be maintained

500

for a subsequent breach occurring within the statutory period before suit. See 37 C.J. 853.

The cases cited by the plaintiff[5] in support of its contention that the statute of limitations does not commence to run on an action by a public body against a public officer and his sureties during his term in office are readily distinguishable from the instant actions. The cited cases involved fraud or embezzlement, which was not discovered until the end of the officer's term or situations in which the courts found that the officer was not bound to account for funds until the end of his term, and that therefore limitations did not commence to operate until that time.

With respect to plaintiff's reliance upon the rule announced in United States Fidelity & Guaranty Co. v. Bates, that where there is no evidence to rebut the presumption that a public officer has received in his second term money which it was his duty to pay over in his first term, such presumption must be accepted as an established fact, it has been previously pointed out in this memorandum that plaintiff, by its own allegations, has precluded itself from the benefit of any such presumption in the instant actions.

■■■ What statute of limitations governs the instant actions?

Under Nebraska law the character of a cause of action is determined by the allegations of fact contained in the petition, unaffected by conclusions of the pleader. Johnson v. Radio Station WOW, 144 Neb. 406, 13 N.W.2d 336, 14 N.W.2d 666. From the nature of the allegations in the complaint, it is obvious that plaintiff is attempting to state facts from which relief may reasonably be granted upon the bonds—that is, a cause of action on the bonds. The rule recognized in a long series of Nebraska cases is that a cause of action on an

official bond is governed by the ten year statute of limitations provided by Section 20-209, of the Compiled Statutes of 1929. Merriam v. Miller, 22 Neb. 218, 34 N.W. 625; Alexander v. Overton, 22 Neb. 227, 34 N.W. 629; Bantley v. Baker, 61 Neb. 92, 84 N.W. 603; Ericsson v. Streitz, 132 Neb. 692, 273 N.W. 17; Neisius v. Henry, 143 Neb. 273, 9 N.W.2d 163. (The Merriam and Alexander cases deal specifically with a county treasurer's bond.)

■■■ The argument of the defendant National Casualty Company that Section 77-1947 providing that a county treasurer's bond shall be "security for the payment by such treasurer" to the state treasurer and others of taxes collected by the county treasurer is a special statute taking precedence over general ones, such as Section 12-112, (providing that official bonds shall be obligatory upon the principal and sureties for the faithful discharge of all duties required by law of the principal) and fixing liability on a county treasurer's bond as merely collateral security for the performance of his duties, is not warranted under Nebraska law. Neither is there any merit in the defendants' reasoning that an action on the bond is barred because an action against the principal for failure to perform his statutory duty may only be brought within four years after a cause of action accrues.

While Section 77-1947 was enacted after Section 12-112, there is nothing in the former section to justify the conclusion that the Legislature, by the adoption of that section, intended to subtract from the meaning and effect of Section 12-112.

■■ These sections, insofar as they apply to the bonds of a county treasurer, should be regarded as part of one system or subject, and, when statutes are so regarded, the later one is to be considered as supplementary to those preceding it on the same

[5] Harrison County v. Ogden, 165 Iowa 325, 145 N.W. 681; Skagit County v. American Bonding Company, 59 Wash. 1, 109 P. 197; City of Hillyard ex rel. Tanner v. Carabin, 96 Wash. 366, 165 P. 381; Massachusetts Bonding & Insurance Co. v. Board of County Com'rs of Adams County, 100 Colo. 398, 68 P.2d 555; Cook v. Commissioners of Houston County, 62 Ga. 223; Megarity v. Navarro County, Tex.Civ.App., 297 S.W. 864; City of Sacramento v. Simmons, 66 Cal.App. 18, 225 P. 36; Locust Creek Drainage Dist. v. Seay, 190 Ark. 739, 81 S.W.2d 835; City of St. Anthony v. Mason, 49 Idaho 717, 291 P. 1067; United States Fidelity & Guaranty Co. v. Bates, 139 Neb. 131, 296 N.W. 560.

subject. State v. Omaha Elevator Company, 75 Neb. 637, 106 N.W. 979, 110 N.W. 874.

Defendants' argument is answered by the Supreme Court in Ericsson v. Streitz, 132 Neb. 692, 273 N.W. 17. This was an action on a county judge's bond for failure of the judge to pay over, upon the expiration of his term of office, sums which had been paid to him by an executor for the benefit of an absent devisee, but which had been deposited by the judge in a bank which subsequently failed. The sureties made the same contention as in the instant actions—that the action was on a liability created by a statute and was governed by the four year statute of limitations. The court at page 21 of 273 N.W. said: "If the fund involved herein was held by appellant Streitz in his official capacity as county judge (which question will be considered later) and he failed to pay it to his successor in office at the expiration of his term, the cause of action accrued at that time. It is urged by appellants that plaintiff's cause of action as against Streitz was on a liability created by statute and barred in four years; and that the liability of the surety company as surety on the official bond, which defendant contends is a collateral obligation, is also barred. A number of authorities are cited from other jurisdictions in support of this position. We do not deem it essential to analyse or distinguish those citations in this opinion. The allegations of plaintiff's petition make this action, in substance and in form, an action upon an official bond, not on a liability created by statute. The question here considered appears to have been settled by this court, adverse to the contention of the appellants, in an early case brought against the county treasurer and his bondsman on an official bond to recover for illegal fees collected by such officer. 'In such case the liability of both principal and sureties in his bond, is original and primary; and the action lies against both without having first sued the officer for the tort.' Kane v. Union P. R. R., 5 Neb. 105." and "We conclude that the liability of both appellants, as principal and surety on the bond sued upon, is original and primary, and as to time of commencement of action to be governed by the provisions of section 20-209, Comp.St.1929, providing: 'An action upon the official bond or undertaking of an executor, administrator, guardian, sheriff, or any other officer, * * * can only be brought within ten years.' See Chicago B. & Q. R. Co. v. Philpott, 56 Neb. 212, 76 N.W. 550."

Similar contentions were urged before but were rejected by the Supreme Court in Neisius v. Henry, 143 Neb. 273, 9 N.W.2d 163. This was a taxpayer's suit against the chairman of the board of public works of a city, and the sureties on his official bond, to recover money paid to the chairman in excess of his statutory salary. The sureties contended that the applicable statute of limitations was Section 20-206, providing that actions upon a liability created by statute shall be brought within four years

At page 165 of 9 N.W.2d, the court said: "Consequently, we conclude that whatever the statute of limitations may have been on any cause of action existing against Henry if no bond had been given, or on any cause of action which may have existed against him if he had not signed the bond, his liability and that of the surety company must be determined by the bond and the statute of limitations applicable to a cause of action brought on the bond." and "Our statute, section 20-209, was copied from the statutes of Ohio in 1858 with little change since. In King v. Nichols, 16 Ohio St. 80, decided in 1865, the supreme court of that state in construing section 17 of their Code, which was the same as our section 20-209, said: 'The language of the seventeenth section of the code, expressly limiting actions on official bonds to ten years, leaves no room to doubt that the legislature intended such actions should be subject to that limitation, and no other; for to hold that they are constructively limited to a different period, would annul that section, and give it no effect whatever.' We are of the opinion therefore that section 20-209 provides the applicable statute of limitations as to suits based on an official bond."

And at page 166 of 9 N.W.2d: "We are of the opinion that a bond given by a public officer for the benefit of the public and conditioned for the faithful performance of his duties, is an official bond within the meaning of section 20-209, Comp.St.1929, and that a suit on such a bond may be main-

502

tained at any time within ten years from its breach."

There is nothing in the language of these opinions to indicate that the Supreme Court thought that an action on a treasurer's bond was not within the ten year statute of limitations, or that the bond was to be construed as merely collateral security. It may not be said that the Legislature, by adopting Section 77-1947, intended to lessen the security of a county treasurer's bond.

Defendants rely on Department of Banking v. Hall, 135 Neb. 191, 280 N.W. 844. This was an action against one Hall and his wife and their sureties to recover damages for alleged fraud of the defendants Hall while operating a state bank. While the Supreme Court concluded that the action was governed by the four year statute of limitations, examination of the opinion shows that this was an action for fraud, and that it was brought on that theory rather than as an action on an official bond. There is no express language in this opinion which sustains defendants' argument that the court in this case approved the rule that an official bond is merely collateral security.

In considering the liability of sureties on a county treasurer's bond, the Supreme Court in Kane v. Union Pacific Railroad, 5 Neb. 105, at page 107, said: "But section nine, of chapter VI, of the General statutes, provides, that 'all official bonds shall be obligatory upon the principal and *sureties*, for the faithful discharge of all duties required by law of such principal, for the use of any person injured by a breach of the conditions of such bond'. And this liability is original and primary, and, therefore, the action may be brought against both the principal and sureties, without having first sued the officer for the tort." While this decision was rendered in 1876—before the enactment of Section 77-1947—the case has been cited by the Supreme Court many times with no indication that it is not still the law in Nebraska with respect to county treasurers' bonds.

The defendants' contention that W. L. Boettcher being deceased for a period exceeding two years in which no steps have been taken for the administration of his estate, defendants are relieved from liability because under Nebraska law a claim against the estate of W. L. Boettcher is now barred, can not be sustained. Eickhoff v. Eikenbary, 52 Neb. 332, 72 N.W. 308; Bell v. Walker, 54 Neb. 222, 74 N.W. 617, 618.

I quote syllabus 3 and 4 in the latter case:

"3. Mere forbearance by a creditor does not release sureties, although, by lapse of time, the remedy is lost against the principal. Eickhoff v. Eikenbary, 52 Neb. 332, 72 N.W. 308, followed.

"4. The liability of a surety in a supersedeas bond is not affected by the failure to present a claim against the estate of his principal."

The rule is also stated in 50 Am.Jur. 962:

"And in the absence of statute, the cases, with some few exceptions, abundantly support the rule that the failure of a creditor to present his claim against the estate of a decedent principal does not release the surety, even though the claim against the estate may be barred by such omission. The surety has ample means of protecting himself by paying the claim and filing it against the estate, or without paying it, by filing a conditional claim against the estate. Moreover, the payee may look to the sureties as primarily liable, and need not present his claim for payment out of the principal's estate."

And Section 130 of the Restatement of the Law of Security.

"(1) Subject to the rule stated in Subsection (2) and to the rules pertaining to negotiable instruments, the surety is not discharged because the creditor takes no action to enforce his claim against the principal unless the creditor's failure to act is a violation of a judicial decree.

"(2) The surety who has only guaranteed the collection of the principal's obligation is discharged to the extent that the failure by the creditor to take with reasonable promptness appropriate remedies against the principal is the cause of the creditor's inability to collect from the principal." See also 50 C.J. pp. 174, 175.

The cases cited by defendant National Casualty Company [6] in support of its argument that no recovery may be had against the sureties because of the fact that no liability may now be established against the estate of W. L. Boettcher are, with one exception, not applicable on the facts and in view of Nebraska law as announced in Bell v. Walker, 54 Neb. 222, 74 N.W. 617. The exception is Johnson v. Success Brick Machinery Company, 93 Miss. 169, 46 So. 957.

That part of the opinion in this case which held that a creditor's failure to present a claim against the principal debtor's estate within the statutory time released the surety was expressly overruled on a second appeal, 104 Miss. 217, 61 So. 178. See also 104 Miss. 217, 62 So. 4.

The cases cited in support of defendants' proposition that an action may not be maintained against the sureties on a bond unless liability of the principal exists at the time of the commencement of the action [7] do not aid the defendants in the instant actions. The Putnam case was decided under the rule then prevailing in Colorado that an official bond is merely collateral security, and that when an action against a sheriff for violation of his statutory duties by failing to account for fees was barred by the Colorado one year statute of limitations, recovery against the sheriff's sureties was also barred.

The result in the Hatcher case was also based upon the theory of collateral security and, as previously mentioned in this memorandum, the Hall case was treated as an action for damages for fraud rather than an action upon an official bond.

Consequently, the motions to dismiss, motions to strike, and motions to make more definite and certain must necessarily be overruled.

In view of the fact that the two cases have been considered together, separate orders are being this day filed in each case.

---

[6] Auchampaugh v. Schmidt, 70 Iowa 642, 27 N.W.2d 805, 59 Am.Rep. 459; Mulvane v. Sedgley, 63 Kan. 105, 64 P. 1038, 55 L.R.A. 552; Johnson v. Success Brick Machinery Co., 93 Miss. 169, 46 So. 957; Cheesman v. Cheesman, 236 N.Y. 47, 139 N.E. 775.

[7] People v. Putnam, 52 Colo. 517, 122 P. 796, Ann.Cas.1913E, 1264; Hatcher v. State, 125 Tex. 84, 81 S.W.2d 499, 98 A.L.R. 1213; Department of Banking v. Hall, 135 Neb. 191, 280 N.W. 844.